DIXON *v.* STATE.

4887                                            307 S. W. 2d 792

Opinion delivered December 16, 1957.

*Sid J. Reid,* for appellant.

*Bruce Bennett,* Atty. General; *Ben J. Harrison,* Asst. Atty. General, for appellee.

SAM ROBINSON, Associate Justice. Appellant, Eugene ''Red'' Dixon, age 23, was convicted of the crime of murder in the second degree and was sentenced to twenty-one years in the penitentiary for killing his uncle, Otis Jones, by shooting him with a 30-30 rifle. The killing was admitted and self-defense asserted as justification. There is no contention that the evidence is not sufficient to sustain the verdict. In fact, the evidence would sustain a verdict of murder in the first degree.

It appears that the killing was unprovoked and was perhaps the result of ill feeling the defendant had held for his uncle, the deceased, for a long time. Several years previously, when defendant was a boy, his mother, the sister of the deceased, had separated from her husband, and she and her children went to live with the deceased. It was during the period of about three years that they lived with the deceased that Dixon claims he was abused by his uncle. Defendant also contends that about a year before the killing Jones had threatened to get a gun after defendant, and the defendant left the premises.

It appears that on the day of the killing the defendant, Dixon, drove his truck to the home of a cousin, Eugene Jones, about 10:15 in the morning. At that time Dixon had his high-powered 30-30 rifle in the truck with him. Later, he and his cousin transferred to Eugene's car, and then back to the truck again; then back to Eugene's car. Each time they transferred from one car to the other, Dixon kept his rifle with him. They bought and drank some beer during the day, and along in the afternoon made a trip to Pine Bluff to deliver some automobiles for the Ford agency. Later they again got into Eugene's car and went out on Highway 167, Dixon having the loaded rifle by his side in the car. They stopped at Morehead's Cafe, and after leaving there they came upon an automobile occupied by Dixon's uncle, Otis Jones, and Dixon's mother, Flossie Green, and her husband, Nelson Green. Flossie Green was the sister of Otis Jones. It seems that at that time Dixon warned them not to follow him, and Dixon claims that he saw a gun in the car occupied by his relatives. There was a .410 gauge shotgun in the car, that had been put there by Dixon's mother on her return from a little hunt.

Dixon and Eugene Jones drove on south on Highway 167, and after a few miles pulled into Lisenby's service station, and while there Dixon's uncle and his mother and step-father drove up. His uncle, Otis Jones, got out of the car, and Dixon shot him with the high-powered rifle, killing him almost instantly. Dixon claims that he was afraid for his own life and that Jones was getting

the gun out of the car occupied by his mother and stepfather when he, Dixon, fired the fatal shot.

Dixon gives no explanation whatever as to his reason for taking the loaded high-powered rifle with him from home that morning, or why he kept it by his side all during the day. There is no showing that his uncle had ever done him any substantial harm, and the evidence is convincing that on the occasion when he killed his uncle, the uncle was interested in getting him to go home so that he would not get into trouble.

The evidence is convincing that Jones had no weapon at the time he was killed, nor was he attempting to get the .410 shotgun out of the car. The bullet fired by Dixon struck Jones just about the center of the stomach and came out the lower back region, which proves conclusively that Jones was facing Dixon at the time the shot was fired, and the little .410 gauge shotgun was still in the car that Jones had just left.

Appellant contends that the trial court erred in not permitting defendant to show that a short time before the killing Jones, the deceased, was mad because he did not know where his son was. There is no contention that Jones blamed Dixon in any way for his own lack of knowledge of the whereabouts of his son. Perhaps evidence of Jones' feeling toward Dixon would have been admissible in evidence to show who was the probable aggressor, but Jones' feeling toward a third person would not be relevant. Mrs. Green, mother of the defendant, and sister of the deceased, was asked:

"Q. Now, then, after that what occurred?

A. Well, we went on. I begged my brother to turn around and come back, and he said, no, he was gonna make—"

No showing was made as to what the witness would have said if she had been permitted to answer the question. We have repeatedly held that it is necessary to proffer the testimony in controversy.

Appellant complains of the trial court's action in refusing to admit testimony to the effect that the de-

fendant and the deceased never did get along very well. It is true that the court at first sustained an objection to such evidence, but later the court said:

"THE COURT: If it was your intention to prove that he was a man of violence, that sort of thing—

"MR. REID: That is exactly what I am trying to prove.

"THE COURT: All right, I will permit it."

The witness was then permitted to testify that the deceased had not treated her children in a kindly manner.

The court also sustained an objection to evidence to the effect that the deceased had caused the witness to pay for gasoline which he claimed Dixon had obtained. The materiality of this testimony is not shown.

Appellant also contends that the trial court erred in permitting the prosecuting attorney to ask the defendant on cross-examination if he claimed self-defense when he was first arrested. This was proper cross-examination and was not error.

Appellant cites cases to the effect that evidence of threats is admissible, but the record contains no evidence of threats.

Finding no error, the judgment is affirmed.