Clete CALLAWAY, Jr. *v.* STATE of Arkansas

CR 75-38                                    524 S.W. 2d 617

Opinion delivered June 30, 1975

*Dennis K. Williams,* for appellant.

*Jim Guy Tucker,* Atty. Gen., by: *Gary Isbell,* Asst. Atty. Gen., for appellee.

CARLETON HARRIS, Chief Justice. Clete Callaway, Jr., appellant herein, was found guilty of murder in the second degree by a jury which fixed his punishment at 21 years confinement in the Arkansas Department of Correction. From the judgment so entered, appellant brings this appeal. For reversal, five points are relied upon which we proceed to discuss, though not in the order set out by appellant.

It is contended that the verdict is not supported by substantial evidence. We disagree. The evidence on the part of the state was that on May 24, 1974, Frank Smith was sitting on his porch around 11:00 P.M. talking with a friend, Morris Bigelow, when a car came around the corner; someone fired from the car, and Bigelow, frightened, left immediately. Eva Jean Cook, who lived "a house away" from Smith testified that she heard Smith talking on his porch before the shooting and after the shots, she went to the Smith premises, observing Clete Callaway with a shotgun in his hands, Smith lying at the corner of the house near the porch. Before calling the police and an ambulance, the witness stated that she heard Clete say, "I told you I was going to kill you, you son of a b..." She said that Callaway then got in his car and left.

The witness testified that she heard two shots, seeing the first one fired, and subsequently hearing a second. Callaway was arrested at 11:45 P.M., and told the arresting officer that he was on his way to the police station. Officer Edrington testified that appellant had a 12-gauge shotgun, with three loaded shells, the gun normally holding five shells, and not being plugged. Callaway contended that he acted in self-defense. He said that he had observed Smith earlier passing by his house, and that he then went in and obtained his shotgun; that he was fearful since Smith had earlier shot him,[1] and had threatened to kill him. He said that when he drove in front of Bigelow's house, he saw Smith "coming around the house"; that Smith hollered, " 'Hey Red,' and when he said that I went to shooting.' " Appellant added that Smith had his hand in his pocket and when the latter said that he wanted to talk to appellant, "I went to shooting." He said he shot Smith the second time because "I didn't want him to kill me." The jury is the fact-finder, and it is apparent the evidence was sufficient to sustain the conviction.

It is next asserted that the trial court erred in allowing the state to introduce a statement of appellant made a short time after the shooting of Smith. According to Lt. James Cowart, Callaway was arrested at 11:45 P.M., informed of his rights under *Miranda*[2] at 12:08 A.M. and after appellant had first executed a waiver, wherein he acknowledged that he had been advised of his rights, the waiver form also listing same, his statement was taken beginning at 12:20 A.M. The statement was subsequently transcribed and Callaway, after suggesting certain corrections, and initialing same, signed the statement. The court conducted a *Denno*[3] hearing in chambers and found that the statement was voluntarily made.

It is argued that Callaway has no formal education and can only write his name because his sister taught him to do

---

[1]The evidence reflected that on February 9, 1974, Smith, Callaway, and several other persons, were gambling and that an altercation arose between Smith and appellant. On that occasion, Smith shot Callaway several times and Callaway spent about a month and a half in a hospital before recovering from wounds administered in the shooting.

[2]*Miranda* v. *Arizona*, 384 U.S. 436.

[3]*Jackson* v. *Denno*, 378 U.S. 368.

so, and that appellant did not understand his rights when he signed the waiver. Complaint is also made that his statement was taken too soon after the offense occurred. The answers to the questions in the written statement pretty well reflect that they were the actual answers of appellant without any prompting and, while he may not have had much formal education, it is evident that he understood the statement for two corrections were made. The complaint that the statement was taken too soon is a little unusual since most complaints in this category are that defendants are held for too long a period of time before any statement is taken. Certainly, there is no showing that Callaway was taken advantage of, or treated unfairly, due to the statement being made within the hour. Appellant had not been wounded, and according to the testimony, appeared to be in full possession of his faculties and "very calm".

There is no contention that appellant was mistreated or coerced into signing the statement; in fact, the defense offered no testimony at the *Denno* hearing. We find no merit in the argument.

It is next contended that the court permitted the state to impeach its own witness, Eva Jean Cook, and that this constituted error. This point is somewhat difficult to understand. The witness had made a statement to the officers after the shooting and part of her testimony was slightly different from a statement that had been made in the written statement. Actually, considering the testimony given by the witness, heretofore set out, the conflict was minor, but she was asked about this conflict by the state's attorney, the prosecutor referring to the statement that she had made. Defense counsel objected to the use of the statement, declaring that he had not seen it, whereupon the court directed the prosecutor to furnish counsel with a copy. The next objection was that leading questions were being asked and the court commented that the state's attorney was only trying to refresh the memory of the witness. The prosecutor commenced reading from the statement, but the court stopped counsel, and at the request of defense counsel, ordered the portion read stricken from the record.

We do not agree that the questioning of the witness constituted an effort to impeach her testimony for the witness never denied giving the written statement, nor any of its contents. To the contrary, she agreed that she had made the statement and she testified that it was the truth; it appeared that the witness had simply forgotten the particular fact that she was being interrogated about. We find no violation of Ark. Stat. Ann. §§ 28-706 and 28-708 (Repl. 1962).

It is asserted that the trial court committed error in allowing the state to deliver to the jury transcribed written statements of appellant's alleged confession while the tape containing appellant's statement was being played, "said tape being the best evidence." Callaway's statement had been recorded on tape and was subsequently reduced to writing by a stenographer, who did not testify at the trial, and who was not present when the tape was made. Copies of the statement reduced to writing were passed out to members of the jury. Counsel for appellant objected, stating:

> "If Your Honor, please, I would object, and ask that the recording is the best, the tape is the best evidence.

THE COURT:

> Yes, sir. The tape is the best evidence, and it is my understanding the State proposes to play the tape.

Is this correct?

MR. SMITH:

Yes, Your Honor."

The same objection was subsequently reiterated, overruled, and the tape was played, the jurors all having a copy of the transcription.

Here, on appeal, it is argued that error was committed in permitting the jurors to read copies of appellant's statement, while the tape was being played, because, says appellant, this

procedure permitted undue emphasis to be placed on the statement. Appellant cites the Oklahoma case of *Bonicelli* v. *State*, 339 P. 2d 1063 (Okla. Cr. App.) and *Duggan* v. *State,* 189 So. 2d 890 (Fla. App.). Both of these cases hold that to permit written transcripts of a tape to be furnished to the jury is error, contrary to the rules against repetition, improper emphasis, and hearsay. The question has never been presented to this court. As to the objection made (in effect being that the written statements were hearsay), we find no merit for the reason that the statement was signed by appellant and changes in the statement initialed by him. It will be noted that the objection made does not go to the question of improper emphasis or undue repetition and this objection not having been made, we cannot pass upon the issue.

Finally, it is alleged that the trial court erred in not allowing appellant to show the full extent of the seriousness of the wounds received when shot by Smith on February 9, 1974, and in not allowing Solomon Witherspoon, a witness on behalf of appellant, to relate threats made on that date that he intended to kill appellant. Dr. Gene M. Townsend, called by appellant, testified that he had treated Callaway early on the morning of February 9, 1974. From the record:

"Q. Can you describe to the jury the gunshot wounds and where he was shot?

'. Well, yes, sir. He had one gunshot wound in the left flank area, and one in the left side of the face. And, I don't recall, but he may have had a flesh wound in the left shoulder. That's a vague recollection. It was of no medical significance, and I didn't write it down if he did. But he had these two which were of considerable significance. The one in the left flank pursued a course upward and to the right, fragmenting the spleen, perforating the front and back of the stomach, completely tearing out the left lobe of the liver, penetrated the pericardium, which is the sac around the heart, and came to rest just to the right of the breastbone. The one in his . . . The wound of entrance in his left face was just in front of his left ear, and there was no wound of exit."

Counsel for the state then announced that he was objecting to the line of questioning, stating that it was irrelevant and immaterial. The court said that it considered the testimony of the doctor relevant to the extent of the number of times that the man was shot, the fact that he was shot, but the subsequent treatment was not relevant. The examination then proceeded as follows:

"Q. What bullets did you state that you removed from him?

A. I removed both of those that I described, the one into his left face and the one that entered through the left flank.

Q. Did you remove the bullet in his head through his nostril? ***

A. Yes, sir. I removed the one from the face through his nostril. It had lodged in his posterior pharynx.

Q. And the one that went into his flank, where did you remove that from?

A. Just to the right of the breastbone.

Q. To the right of the right breastbone?

A. Just to the right of the . . . The breastbone is in a center line. It's just to the right side.

Q. And he has been a patient of yours all during this time?

A. Yes, sir.

Q. And still is a patient?

A. Well, not in connection with that. He's over that injury."

It thus appears that the doctor gave a pretty thorough

description of the injuries and the only complaint reflected by the record was that the doctor was not permitted to testify to "the seriousness of it" and "the defendant's suffering." Of course, when the doctor said that two of the wounds were of "considerable significance", he was testifying as to the seriousness of the wounds, and he could hardly have testified himself as to appellant's suffering.

Solomon Witherspoon testified on behalf of the appellant as to events which occurred on February 9. After telling about the shooting, Witherspoon testified further:

"And Frank come in the back door there. He went out to load his gun. I come out — out from there with Frank. So, he said he loaded his gun and when he run out, he run out of bullets, and so the boys . . ."

At this point, the state objected to the testimony as being irrelevant, while counsel for defendant said he was trying to show Smith's intent, "reloading the gun, trying, wanting to kill him." Of course, the testimony quoted reveals the gun was reloaded and implies the purpose of the reloading. At any rate, counsel apparently accepted this ruling. Thereafter, appellant's counsel inquired of the witness if Frank Smith made any statements that he would kill Clete Callaway. An objection by the state was sustained and this concluded the testimony of Witherspoon.

We hold there was no error, it being sufficient to point out that no proffer of Witherspoon's testimony was made and we accordingly do not know what answer the witness would have given. *Dixon v. State*, 228 Ark. 430, 307 S.W. 2d 792.

On the whole case, we find no reversible error.

Affirmed.