STEBBINS & ROBERTS, INC.
*v.* John T. HALSEY

79-22                                   582 S.W. 2d 266

Opinion delivered June 11, 1979
(Division I)
[Rehearing denied July 9, 1979.]

*Spitzberg, Mitchell & Hays,* for appellant.

*Hamilton, O'Hara & Hays, P.A.,* by: *James F. O'Hara,* for appellee.

GEORGE ROSE SMITH, Justice. Ever since the decision in *Lumley* v. *Gye,* 2 El. & Bl. 216, 118 Eng. Rep. 749 (1853), the courts have recognized as a tort wrongful interference with a contractual relationship between third persons. In this case the appellee, John T. Halsey, seeks redress for that tort. His complaint alleges that he was employed by PPG Industries, Inc., and lost his job as a result of wrongful conduct by the appellant, his former employer. The verdict and judgment awarded Halsey $30,000 in damages. For reversal the appellant contends primarily that it was entitled to a directed verdict.

In the fall of 1976 PPG and the appellant Stebbins & Roberts were rival paint companies in Little Rock. Halsey had worked as a paint salesman for the appellant for more

than a year. His written contract of employment provided that if he ceased to be an employee of Stebbins & Roberts, he would not for a period of one year compete with the company by selling paint products as an employee of a competitor within any territory he had worked for Stebbins & Roberts during one year before his termination. Halsey, in working for Stebbins & Roberts, had been assigned as his "territory" a list of 165 substantial paint customers such as contractors, apartments, and factories.

Halsey decided to leave Stebbins & Roberts and go to work for PPG. On November 1 he submitted a letter of resignation, to be effective in 30 days. The company made no objection to his leaving, but preferred to accept his resignation immediately. Halsey went to work for PPG on November 2.

Within a day or so Thomas J. Bonner, the president of Stebbins & Roberts, telephoned Larry Bixler, the manager of PPG. Bonner had a law degree and had practiced law for 24 years. The jury could have found, from somewhat conflicting testimony, that Bonner told Bixler that Halsey had a contract with Stebbins & Roberts and could not legally work for PPG. Bonner did not threaten to sue PPG, but he said that he was going to have to make an example of Halsey. Another witness, who had been working at the time for Stebbins & Roberts in a management capacity, quoted Bonner as having said with reference to Halsey: "I'll teach him and the other salesmen a lesson. I'll sue the little bastard and I will name the company that he goes with."

Bixler discussed the matter with his superiors. It was decided that if Halsey could not legally work for PPG in the territory he would have to be terminated. Halsey was given two weeks in which to settle the matter; but Bonner refused to release him from the Stebbins & Roberts contract, and Halsey lost his job with PPG.

The appellant, in arguing that it was entitled to a directed verdict, presents what is really a twofold contention: First, Halsey failed to prove that Bonner's interference was wrongful; and second, Bonner, simply because the appellant

had the employment contract with Halsey, was entitled to make the statements that he did in his conversation with Bixler.

Prosser's discussion of the applicable principles of law is applicable to both the appellant's contentions:

> Given the intention to interfere with the contract, liability usually will turn upon the ultimate purpose or object which the defendant is seeking to advance. The early cases, with their emphasis upon "malice," regarded proof of an improper motive as an essential part of the plaintiff's cause of action. As the tort became more firmly established, there was a gradual shift of emphasis, until today it is generally agreed that an intentional interference with the existing contractual relations of another is prima facie sufficient for liability, and that the burden of proving that it is "justified" rests upon the defendant. Otherwise stated, and perhaps more accurately, the defendant may show that the interference is privileged by reason of the interests furthered by his conduct, but the burden rests upon him to do so.

> \* \* \*

> Where the defendant acts to further his own advantage, other distinctions have been made. If he has a present, existing economic interest to protect, such as the ownership or condition of property, or a prior contract of his own, or a financial interest in the affairs of the person persuaded, he is privileged to prevent performance of the contract of another which threatens it.

> \* \* \*

> But where his interest is merely one of prospective advantage, not yet realized, he has no such privilege. The typical case is that of business competition. The courts have held that the sanctity of the existing contract relation takes precedence over any interest in unrestricted competition, and have enforced as law the

ethical precept that one competitor must keep his hands off the contracts of another. This is true of contracts of employment, where workmen are hired away from an employer, as well as competitive business dealings in general.

Prosser, Torts, § 129 (4th ed., 1971).

Thus Halsey made a prima facie case when he proved that he had a contract of employment with PPG, that the appellant intentionally interfered with that contract, and that Halsey suffered damages as a result of that interference. (That theory of liability was embodied in the court's instructions to the jury.) The burden, as Prosser points out, then passed to Stebbins & Roberts to show that its interference was justified.

An effort might have been made by Stebbins & Roberts to rely upon the restrictive clause in Halsey's contract as giving rise to a *valid* economic interest which the company was entitled to protect, but no such theory was asserted below or has been argued here. To the contrary, all the witnesses who touched upon the point said that, although there may be secrets in the manufacture of paint, there are none in the selling of it. All potential customers are known throughout the trade. The price lists of competitors are readily obtainable.

Instead, Stebbins & Roberts argues that the mere existence of its contract with Halsey, despite its apparent invalidity, created a privilege that justified Bonner's statements to PPG. The authorities cited, however, consist merely of generalizations, such as a statement that "it is not an actionable wrong for one in good faith to make plain to whomsoever he will that it is his purpose to insist upon what he believes to be his legal rights, even though he may misconceive what those rights are." *Kaplan* v. *Helenhart Novelty Corp.*, 182 F. 2d 311 (2d Cir., 1950). But here Bonner went far beyond an academic statement of what he thought his company's rights to be. The jury was justified in believing that he called Bixler for the express purpose of seeing that Halsey was discharged, an attitude that was confirmed by Bonner's refusal to release Halsey from the obligation of an apparently void promise. It

cannot be said that the appellant's attempted justification for its interference with the Halsey-PPG contract was established by undisputed proof; so a directed verdict was not proper.

It is also argued that the trial court's principal instruction was erroneous, but the only objection made was that the defendant had a right or privilege to interfere with the plaintiff's contract. We have already discussed that point. The other defects that are now asserted were not supported by a specific objection below, as required by Rule 13 of the Uniform Rules For Circuit and Chancery Courts.

Affirmed.

We agree. Harris, C.J., and Byrd and Hickman, JJ.