Larry Joe PHILLIPS *v.* STATE of Arkansas

CA CR 79-24                                     587 S.W. 2d 83

Opinion delivered September 12, 1979
and released for publication October 4, 1979

*Tom J. Keith,* for appellant.

*Steve Clark,* Atty. Gen., by: *Dennis R. Mollock,* for appellee.

M. STEELE HAYS, Judge. This is a criminal appeal[1] from a sentence of eight years imprisonment upon a verdict of guilty of attempted murder in the second degree. There are two assignments of error: (1) that the opinion of the appellant's father as to appellant's alleged insanity should not have been excluded; and (2) that the verdict was against the greater weight of evidence and contrary to law.

The appellant is 27 years of age and resides with his family in the city of Rogers, Arkansas. His living quarters are in a separate structure, immediately adjacent to the family dwelling. Appellant has never worked and is dependent entirely upon his father. In 1968, the appellant was diagnosed as schizophrenic — catatonic type, and on three occasions, during 1969 to 1978, he was admitted to the Arkansas State Hospital. The diagnosis was schizophrenia with mental retardation and, since 1971, drug dependence. On the morning of August 1, 1978, appellant purchased two tubes of airplane glue and inhaled the fumes in a plastic bag. He rested, ate, became nauseated and later mowed the yard for his father. Appellant obtained two more tubes of glue which were also inhaled. Under a delusion that his father had been killed and that his mother was leaving to meet men for sexual purposes, appellant followed her and attacked her in the yard, stabbing her with a paring knife, The wound did not require surgical intervention but required five days hospitalization. Appellant went to his own room where he inflicted a very superficial knife wound to his own abdomen, requiring no stitches. Appellant returned in remorse, readily admitting his act.

On the issue of insanity, Dr. Alan Tuft, a clinical psychologist, testified for the appellant, whom he first examined two or three days after the incident, again several days prior

---

[1]This appeal was originally lodged in the Arkansas Supreme Court, but was transferred to this Court under Rule 29.3 of the Rules of the Arkansas Supreme Court.

to trial, and on one other occasion. Dr. Tuft's initial impression of the appellant was that of inadequate personality (Nonpsychotic) and of marginal intelligence but he changed his opinion after his second examination, during which appellant was given tests and based on the results and psychiatric history, Dr. Tuft concluded that appellant was functioning intellectually in the dull normal range, was schizophrenic and subject to drug dependence. Dr. Tuft described a part of the schizophrenic process as being subject to random thoughts he could not control which the glue enabled him to stop. Dr. Tuft's opinion was that appellant was suffering from a mental disease or defect on December 14, 1978, and on August 1, 1978, to such a degree that he did not have the capacity to appreciate the criminality of his conduct; that the appellant did not have the capacity to conform his conduct to the requirements of the law and was not capable of forming an intent to commit murder on August 1, 1978.

Appellant's father testified that appellant was hospitalized in 1968; that he heard voices and sounds coming from the radio when the radio was not working; that appellant quit eating and sleeping; that appellant lived with him and was solely dependent on him; in his opinion appellant knew right from wrong at times and at other times he did not; that there were times when appellant couldn't make a judgment at all and times when he would be fine; that at other times he would try to "choke me to death"; that at times appellant wouldn't hurt a fly and then his personality would change and he would be "at the far extreme" of anything normal. Mr. Phillips testified that his son started using drugs in 1971 and had been unmanageable since then; that appellant could be talked out of his "morbid personality" fairly easily before going on drugs; that glue sniffing caused appellant to have fierce anger, to become easily upset and to experience visions and hallucinations; that the glue just added visions to the voices he was already hearing.

On cross examination Mr. Phillips testified to an incident in which appellant had chased his mother with an axe and was committed to the State Hospital as a result of the incident; that appellant had been arrested four or five times for

being "high on glue" and served three months on one occasion; that appellant ordinarily calmed down when the police were called.

State's rebuttal witness, Dr. Travis Wayne Jenkins, psychiatrist, testified that he had seen appellant for evaluation twice recently and had seen him four or five visits in the fall of 1973. On August 11, Dr. Jenkins interviewed appellant and his conclusions were that appellant was drug dependent, had occasions of chronic schizophrenic disorder, and borderline mental retardation. He examined appellant again on December 5, 1978, and had records from the Arkansas State Hospital and other places available to him. Dr. Jenkins's evaluation of appellant was that he had a history of schizophrenic disorders that did not seem to be actively present in either the August or December interviews; that appellant had chronic, obsessive use of glue sniffing, and borderline retardation. He defined schizophrenia as a major psychiatric illness in which the person cannot maintain contact with reality at times, experiencing delusions and hallucinations. Dr. Jenkins's opinion was that in August there was no evidence to suggest that appellant was psychotic to the degree of criminal irresponsibility — that he may have had some levels of psychosis but not to the extent that he could not conform his behavior to the standards or right and wrong; that appellant in his opinion had the ability to conform his behavior to the mores of society, with the exception of the compulsive glue sniffing, and could appreciate the criminality of his conduct, even when intoxicated on glue. He stated that he thought the appellant was capable of forming the specific intent to stab his mother at the exact moment he struck the blow.

The appellant's first point for reversal deals with the following segment of the record (T 54):

MR. KEITH: All right, based on your observation of him on a day in and day out basis, do you have an opinion as to what his mental condition is?

MR. CLINGER: I'm going to object on the basis that the father isn't qualified to give an opinion, make a mental

diagnosis, psychiatric diagnosis.

MR. PHILLIPS: I believe I am better qualified —

THE COURT: Just a minute. On what basis do you think this is admissible, Mr. Keith?

MR. KEITH: Your Honor, under the court's ruling in *Little* v. *State,* not very long ago, they said that lay people who have had an opportunity to observe someone can state an opinion as to the mental condition of a person.

THE COURT: All right. Get it and show it to me.

NOTE: Mr. Keith Presented the case to the Court.

THE COURT: All right, Mr. Keith, I will allow you to interrogate this witness as to matters related to defendant's ability to tell right from wrong, but without further foundation he will not be permitted to testify as to conclusions gained from other people. In other words, from doctors or other sources. He is not entitled to rely on hearsay but he is entitled to testify to things he knows about the defendant's ability to tell right from wrong. That's what the case says.

MR. KEITH: Your Honor, also I believe that was based on a trial ruling in regard to mental disease prior to the amendment to the code or prior to the adoption of the code. The case was — it was based on the rules prior to the adoption of the code.

THE COURT: Well, so what?

MR. KEITH: My position is that since the adoption of the code that it also extends to right or wrong under the old code.

THE COURT: It is still a part of it.

MR. KEITH: Well, there has been considerable . . . note

my exceptions.

From this portion of the record the appellant argues that the question was proper, and that the objection should have been overruled. Appellee impliedly concedes the point, but argues that before a nonexpert can give such an opinion an adequate foundation must be paid, which appellee says was not done.

We agree with appellant that the question was proper under a long and unbroken line of authority[2] in this state beginning in criminal cases with *Bolling* v. *State*, 54 Ark. 588 (1891), (and in civil cases even earlier in *Kelley's heirs* v. *McGuire*, 15 Ark. 601 (1851)) and followed consistently down through *Hill* v. *State*, 249 Ark. 42 (1972). This rule is not recognized in every other jurisdiction except New York, which prefers the word "rational" versus "irrational" and Massachusetts, which rejects the rule altogether and limits such opinions to experts, with the exception of will contests. 72 ALR 579.

We agree, as well, that the foundation for the question was more than adequate. The witness had testified that he was the appellant's father, had been the sole support of the appellant during appellant's life (27 years), that appellant had lived with him during most of his life, and testified to numerous incidents giving an ample basis for an opinion as to his son's mental competence. So if the issue were the adequacy of the foundation we would have no difficulty with the problem. In all of the decisions which have dealt with this question (cited in footnote 2) not a single witness had as full an opportunity for observation as appellant's father. As counsel for appellant rightfully asks, if this witness lacks a foundation, where is a foundation to be found? However, we don't accept that as the issue, for the reason that a careful reading of the cited section of the Record reflects that appellee's objection to the question was not to the foundation

---

[2]*Bolling* v. *State*, 54 Ark. 588 (1855); *Shaeffer* v. *State*, 61 Ark. 241 (1898); *Green* v. *State*, 64 Ark. 523 (1898); *Byrd* v. *State*, 76 Ark. 246 (1905); *Schuman* v. *State*, 176 Ark. 88 (1928); *Davis* v. *State*, 182 Ark. 123 (1930); *Spence* v. *State*, 184 Ark. 139 (1931); *Raprich* v. *State*, 192 Ark. 1130 (1936); *McKenzie* v. *United States*, 266 F.2d 524 (1959); *Hill* v. *State*, 249 Ark. 42 (1970).

(indeed, the word "foundation" is never mentioned or touched on in the objection) but to the qualification of the witness to make a "mental diagnosis, psychiatric diagnosis." Obviously, the objection was to opinion testimony by a non-expert witness and for the reason stated, such opinions are clearly admissible on adequate foundation. It follows, therefore, that the objection should have been overruled, but the obvious fact is that it was neither overruled nor sustained in any clear fashion because counsel for the appellant and the court moved into a discussion of *Little* v. *State*, 261 Ark. 856 (1977), and both the question and the objection were left hanging. There are numerous decisions to the effect that objections and questions left unresolved are waived and may not be relied upon on appeal. *Gallman* v. *Carnes*, 254 Ark. 987 (1973); *Riddell* v. *Little*, 253 Ark. 686 (1972); *Flake* v. *Thompson, Inc.*, 249 Ark. 713 (1970).

To reverse on this point would strain the established rule that no party ought to be allowed to assign as error on appeal a ruling by the trial court that might have been corrected in the first instance by timely objection or inquiry. The rule encourages counsel to call the possibility of prejudicial error to the court's attention so that it can be corrected or, if not, so that a clear opportunity for correction be given. But even if we could find that the objection was impliedly sustained, we are confronted with the problem that no offer of proof was made and decisions requiring a tender of the testimony an appellant believes should have been admitted are many. *West* v. *State*, 55 Ark. 668 (1973); *Callaway* v. *State*, 258 Ark. 352 (1975); *Ray* v. *Fletcher*, 244 Ark. 74 (1969). Moreover, if the discussion between the court and counsel is examined in context, it seems clear that the words "without proper foundation" used by the trial judge refer to the language in *Little, supra;* in fact, as he spoke with counsel, the judge was actually reading from the opinion, which dealt with a different type of foundation than here presented. In *Little* (as in the earlier cases of *Hill* v. *State* and *Shaeffer* v. *State* cited in footnote 2) the issue was whether a non-expert could give an opinion concerning the defendant's ability to *resist* doing wrong (as opposed to the ability to *distinguish* right from wrong), and the court in *Little* held that without a further foundation, the opinion of such witnesses was limited to the defendant's ability to dis-

tinguish between the two. It was this sort of foundation the court was speaking of in *Little,* and it is obvious that the trial court was referring to the same thing.

Finally, even if it can be argued that there was error in this instance, it can hardly be said that the error was prejudicial to the appellant. The question dealt with appellant's mental competency and the same information was given by the witness later on cross-examination (T. 63):

Q.: You thought he was mentally sick?

A.: I know he was.

Turning to the three questions counsel agrees that he should have been permitted to ask the non-expert witness, i.e.: whether appellant lacked the capacity, as a result of mental disease or defect, a) to conform his conduct to the requirements of law; b) to appreciate the criminality of his conduct, and c) whether appellant had the necessary intent to kill his mother. These are pertinent questions in light of the adoption of Ark. Stat. Ann. §41-601 (Repl. 1977), but we are confronted with the same problem as with respect to the question relating to the appellant's mental competence. The questions were never asked and, furthermore, there was no offer of proof. Under the decisions cited, *supra,* a tender of the evidence excluded is essential.

Appellant's second point is that the verdict is against the greater weight of the evidence and is contrary to law. How the verdict is contrary to law is not made clear, but as to the weight of the evidence the law is that the verdict will not be disturbed on appeal if supported by substantial evidence. *Cook* v. *State,* 196 Ark. 1133 (1938); *Campbell* v. *State,* 265 Ark. 938 (1979). The evidence presents a case of two well-trained experts in the field of psychiatry, one a clinical psychologist and the other a psychiatrist, both knowledgeable and experienced, holding opposite views as to the effect of the appellant's psychosis. One was of the opinion that appellant had the ability to appreciate the criminality of his conduct, even when under the effects of the inhalant, and capable of forming an intent to commit murder, and the other one held a

contrasting view. This issue was for the jury to decide. Both experts had the benefit of adequate interviews with the appellant, the interviews within close proximity to the trial and to the incident, and both had access to, and made use of, medical records relative to the psychiatric history of the appellant. It is not for us to redecide issues of this sort. The language of *Campbell* v. *State, supra,* is applicable:

> Appellant contends that we should overrule such decisions as *Stanley* v. *State,* 248 Ark. 787, 454 S.W.2d 72, through which we have held that, on appellate review of evidence relating to insanity (or mental disease or defect), this court will not attempt to determine where the preponderance lies, but will affirm the judgment if there is substantial evidence to support the jury verdict on which it is based. This we decline to do. In cases such as this, the jury's decision depends to a great extent upon the evaluation of credibility of witnesses and determination of the weight to be accorded to their testimony, particularly when expert opinions are critical to the issue.

We find, therefore, that the evidence was sufficient to support the verdict of the jury.

Finding no reversible error, the judgment is affirmed.