Andrew Dean DOWNEY and Reita F. DOWNEY *v.*
Freddie L. MAY and R. Byron JONES d/b/a
JONES MECHANICAL CONTRACTORS

81-99                                                    619 S.W. 2d 614

Supreme Court of Arkansas
Opinion delivered June 22, 1981
[Rehearing denied September 14, 1981.]

*Spencer, Spencer & Shepherd, P.A.*, for appellants.

*Robert J. Johnson*, for appellee May.

*Shackleford, Shackleford & Phillips, P.A.*, for appellee Jones.

ROBERT H. DUDLEY, Justice. This is a tort suit involving injuries to appellant Andrew Downey which occurred during a $4,000,000 remodeling of the Georgia-Pacific Corporation's particle board plant at Crossett. On September 15, 1975 appellee Freddie May was operating a crane which was located just outside a wall of the plant. The roof of the building had been removed. The boom of the crane reached over the top of the wall, and the lines extended down inside the building. Appellant Downey, a steelworker, was beside a 20-foot 1500-pound steel beam being lifted and placed horizontally into the inside wall of the building at a height of approximately 40 feet. The crane operator, appellee Freddie May, could not see inside the building and was given directions from a signalman stationed on top of the wall. After positioning the beam, appellee May was given the signal to stop all movement of the lines on the crane. Appellant Downey and his co-worker had difficult in making the beam fit precisely into the wall. Downey climbed atop the beam and attempted to hammer it into place with an 8-pound sledgehammer. On the second blow the beam fell 2-1/2 to 3 feet, in turn causing appellant Downey to fall 40 feet to the concrete floor and suffer

permanent disabling injuries. Appellants, Downey and his wife, contend that appellee May negligently released the tension on the crane lines which held the beam, causing both the beam and appellant to fall. They also claim that the negligence should be imputed to appellee Jones Mechanical Contractors.

The testimony of Don McLin, an experienced steelworker and appellant's co-worker, was that there was no slack in the lines immediately prior to the accident. He explained that if no slack existed in the lines and the beam had become dislodged from the wall when appellant struck it with the sledgehammer it would have swung slowly outward over the floor rather than fall downward. He testified that the end of the beam upon which appellant was positioned should have risen as it was the shorter, or lighter, end if the lines had remained taut. He stated that slack alone caused the accident. On the issue of causation of slack in the line there is only one statement by the witness. It is quoted because it is critical to the decision in this case.

Q. How could you get slack in the line?
A. It could only be from the operator letting it down, or maybe some fault with the machine where a boom could leap down.

This alternative statement is the only evidence on causation and may be fairly summarized as stating that appellee May was negligent or else there was a malfunction of the machine. The trial judge, having no other evidence on causation, granted directed verdicts in favor of appellees.

Given this particular fact situation, our decision to affirm or reverse will depend entirely on the standard we use to test the sufficiency of evidence in the case of a directed verdict. We recognize that we have used differing standards in the past.

Clearly, it cannot be said that, given this particular set of facts, there was no evidence of negligence. The "no" evidence standard was mentioned as recently as 1978 when we said:

> It is well recognized that upon a defendant's motion for a directed verdict, at the close of plaintiff's case, the evidence, including all reasonable inferences thereto, must be viewed in the light most favorable to the plaintiff and will be granted only when there is *no evidence* tending to establish an issue in plaintiff's favor ... [Emphasis supplied.]

*Texarkana Housing Authority* v. *Johnson Construction*, 264 Ark. 523, 573 S.W. 2d 316 (1978).

In the past we also have used the "any" evidence standard, *Williams* v. *St. Louis & San Francisco Railway Co.*, 103 Ark. 401, 147 S.W. 93 (1912) and the "slight" standard, *Little Rock & Fort Smith Railroad Co.* v. *Perry*, 37 Ark. 164 (1881).

In 1969 we recognized the confusion and sought to harmonize the cases with the following statement:

> In testing the granting of a directed verdict the rule has been many times stated and ofttimes with a slight variation. A typical statement of the rule is found in *Barrentine* v. *The Henry Wrape Co.*, 120 Ark. 206, 179 S.W. 328 (1915):

> > In determining on appeal the correctness of the trial court's action in directing a verdict for either party, the rule is to take that view of the evidence that is most favorable to the party against whom the verdict is directed, and where there is any evidence tending to establish an issue in favor of the party against whom the verdict is directed, it is error to take the case from the jury.

> We have no intention of deviating from the rule just stated; however, it has been some time since we have pointed up the meaning of the term "any evidence." The term has long been recognized to mean "evidence legally sufficient to warrant a verdict." *Catlett* v. *St. Louis I.M. & S. Railway Co.*, 57 Ark. 461, 21 S.W. 1062 (1893). To be legally sufficient it must be

substantial; and substantiality is a question of law. *St. Louis S.W. Ry. Co.* v. *Braswell*, 198 Ark. 143, 127 S.W. 2d 637 (1939).

*Paul Hardeman, Inc.* v. *J. I. Hass Co.*, 246 Ark. 559, 439 S.W. 2d 281 (1969).

This is the more logical view. It will save litigants time and expense. It will give certainty to the law and it will promote justice. There has been no intent to deviate from it. It was clearly stated in *Jackson* v. *McCuiston*, 247 Ark. 862, 448 S.W. 2d 33 (1969).

> In resolving the propriety of the directed verdict, we must of course take that view of the evidence most favorable to plaintiffs and see if there is *any substantial evidence on which the jury could have based a finding of negligence.* [Emphasis supplied.]

The evidence in this case, when viewed most favorably to the appellant, is not sufficient to allow the case to go to the jury because the jury would have to guess or speculate to arrive at a verdict. A jury cannot be permitted to decide a case on the basis of speculation. *Bussell* v. *Missouri Pacific Railroad Co.*, 237 Ark. 812, 376 S.W. 2d 545 (1964). A jury should have sufficient evidence to weigh probabilities or assess credibility in making its decision. See *T.I.M.E. Freight, Inc.* v. *McNew*, 241 Ark. 1048, 411 S.W. 2d 500 (1967).

Affirmed.

ADKISSON, C.J., PURTLE and HAYS, JJ., dissent.

JOHN I. PURTLE, Justice, dissenting. I disagree with the result reached by the majority even if the facts set out in the opinion are the only ones to be considered. It is not pointed out in the opinion but two other witnesses testified substantially the same as witness McLin that the end of the beam fell 2-1/2 to 3 feet; also, that the only way it could fall was to have slack in the choke line. Returning to the statements of McLin, as quoted in the majority opinion, it is obvious that

he felt that the crane operator slacked off on the line. All of the testimony indicates that the operator was not signaled to slack off on the line at any time until after the appellant had fallen. The most that can be said is that McLin's answer is subject to either of two reasonable interpretations. It was either the fault of the crane operator in letting slack in the line or the fault of the machine in failing to hold the line steady. In *Jackson* v. *McCuiston*, 247 Ark. 862, 448 S.W. 2d 33 (1969), we stated:

> If the evidence permits of more than one reasonable conclusion, that conclusion is for the jury and not the court.

I cannot agree with the majority that the question and answer quoted in the opinion is all the evidence which could be considered on behalf of the appellant.

If the trial court is upheld on the summary judgment in favor of Freddie May, certainly the Jones Mechanical Contractors would not be liable. Since I do not believe it was proper to direct a verdict in favor of the crane operator, it would be necessary to consider his employment status.

There is no dispute of the fact that the crane being used at the time of this occurrence was leased from Jones Mechanical Contractors. Neither is it disputed that the operators of the crane were obtained through Jones Mechanical. The engineer for Georgia Pacific testified that he called Jones and Jones did furnish the operators. He stated the operator on duty at the time of the occurrence was employed by Mr. Jones doing business as Jones Mechanical. He further testified that he reimbursed Jones for the salary of the crane operators every two weeks and that all of the crane operators, except the one on duty at the time of this incident, were terminated because they were not operating the crane safely. He stated he did not make that determination. This, of course, implies that Jones made the determination since Jones was their general employer and the one who paid them. It seems to me that the law is well stated in AMI 702 which reads:

An employee is acting within the scope of his employment if he is engaged in the transaction of business which has been assigned to him by his employer or if he is doing anything which may reasonably be said to have been contemplated as a part of his employment and is in furtherance of his principal's interest, even though it was not expressly authorized and may have been specifically forbidden.

It is readily apparent that the crane operator was furthering the business of his employer while he was erecting the steel for the other parties. It seems to me that Restatement of Agency 2d, sec. 227, p. 501 correctly sums up the employment situation when it states:

In the absence of evidence to the contrary, there is an inference that the actor remains in his general employment so long as, by the service rendered and other, he is performing the business intrusted to him by the general employer.

I would reverse and remand because there is evidence of a substantial nature tending to show negligence by the crane operator and that his general employer retained control over him. Further, the evidence may well have been strengthened by the defense witnesses and proof.

ADKISSON, C.J. and HAYS, J., join in this dissent.