# KINCO, INC. *v.* SCHUECK STEEL, INC.

84-66                                                        671 S.W.2d 178

Supreme Court of Arkansas
Opinion delivered June 25, 1984

*Mitchell, Williams, Selig, Jackson & Tucker,* by: *Debra K. Brown* and *Byron Freeland,* for appellant.

*Owens, McHaney & Calhoun,* by: *John C. Calhoun, Jr.,* for appellee.

ROBERT H. DUDLEY, Justice. Appellee, Schueck Steel, Inc., filed suit against appellant, Kinco, Inc., for unfair interference with Schueck's business expectancy. Schueck asked for $15,000 as lost profit and $25,000 as punitive damages. The trial judge refused to give an instruction on punitive damages. The jury returned a verdict for Schueck and awarded $25,000 in compensatory damages. The trial judge reduced the amount of damages to the amount of compensatory damages prayed, $15,000. Kinco appeals, asserting that Schueck failed to make a prima facie case of tortious interference with a business expectancy, or alternatively, that Kinco's interference was privileged. Schueck cross-appeals, asking that the $25,000 verdict be reinstated but, at oral argument, Schueck dismissed its cross-appeal. We affirm on direct appeal. Jurisdiction is in this court under Rule 29 (1)(o) as the case presents a question in the law of torts.

The pertinent facts are as follows. In 1981, the Pulaski County School District hired an architectural firm to prepare plans and specifications for the construction of the

J. A. Fair school. The architectural firm chose to use a metal wall paneling to cover part of the exterior of the building. The architects thought only one company manufactured the desired type of metal panel and that it was sold under the brand name of Walcon. Appellee Schueck is the local distributor for Walcon. Thomas B. Schueck, Schueck's chief executive officer, also thought it was the only distributor for this type of panel.

The architects decided to establish an allowance in the bid documents for the wall panel. An allowance notifies bidders of the amount which will be allowed for the purchase of a particular item. Accordingly, Thomas B. Schueck met with the architects and they arrived at a cost of $98,952, which included a gross profit of $15,000 for Schueck. An allowance of $99,000 for the wall panel was then put in the bid specifications. The architects did not use the brand name Walcon in the description of the allowance. One of the school's architects, who was working with Schueck on the allowance, told him that they were going to use Walcon if the project came within the budget. All of the bidders on the general contract used the $99,000 allowance figure as their cost for the metal paneling. Obviously, an expectancy existed at that time. After the bids on the general contract were received, all parties still thought the Walcon product would be used. Richardson Construction Company was awarded the contract and Richardson, in turn, subcontracted with Kinco to supply and erect the wall panels. Later, Kinco, after asking the architects if they were interested in receiving quotes on other wall panel, undertook to locate a panel similar to Walcon and found MorWall. Kinco contracted to become a distributor for MorWall. Kinco then became a competitor of Schueck but concealed that from Schueck.

The school district decided to use an additional amount of wall paneling and so the architects issued an addendum requesting price quotations for additional paneling, custom color, and warranties. The addendum stated that a product "similar to" Walcon paneling should be used. Kinco's project manager talked with Schueck about the additional wall paneling and about a quote for custom color. Schueck

still did not know that Kinco was his competitor. There is substantial evidence that Kinco used knowledge of Schueck's prices to make its bid on the addendum lower. There is evidence that, at the time Kinco submitted the Walcon and the MorWall bids to the architect, Schueck's additional price was really $3,000 but Kinco's manager had added profit to the total cost of paneling so that it appeared Schueck was asking $13,000. The architects saw this, thought it was excessive and became irritated with Schueck. Schueck told the architects that somebody had altered his price. Schueck asked Kinco's project manager why his price went from $3,000 to $13,000 and the manager did not give a satisfactory answer. Schueck wrote a letter to the architects and offered to make a gift of the added material and also offered a twenty year guaranteed color for $2,500. His purpose in doing so was to avoid upsetting the architects and school board and because he didn't want to lose the business.

One of the architects later called Kinco's manager to ask about the price discrepancy. The manager's failure to reveal to the architect that he added a profit to the price can be construced as intentionally misleading. A memorandum was put in evidence which indicates that Kinco's manager was delighted at Schueck's predicament.

In addition, Kinco's manager submitted confusing comparisons to the architects about custom colors and the warranties between the two wall panels. The architects asked Kinco for both a "custom color quote only" and a "custom color with ten year warranty." Kinco quoted no extra charge for the custom color and a $4,900 charge for the color with ten year warranty. Kinco never asked Schueck for a "custom color only" quote. Schueck quoted a $2,377 price for a custom color which included the ten year warranty. The warranty dictated the extra charge. The architects then told Kinco to use MorWall.

Lastly, Kinco's manager notified the general contractor that if Schueck's product was selected, the general contractor would have to deal directly with Schueck, despite the fact that the contract between the general contractor and Kinco

stated that Kinco would both supply the materials and erect the exterior.

Appellant's first point is that the lower court erred in refusing to direct a verdict because appellee failed to make a prima facie case of tortious interference with a business expectancy. We find no merit in the argument. The elements of the tort are the existence of a valid business expectancy; knowledge of that expectancy on the part of the interferor; intentional interference inducing or causing termination of that expectancy; and resultant damage. *Walt Bennett Ford, Inc.* v. *Pulaski County Special School Dist.*, 274 Ark. 208, 624 S.W.2d 426 (1981); *Mason* v. *Funderbunk*, 247 Ark. 521, 446 S.W.2d 543 (1969). The test for the trial court in ruling on a motion for a directed verdict by either party is to take that view of the evidence that is most favorable to the non-moving party and give it its highest probative value, taking into account all reasonable inferences deducible from it; after viewing the evidence in this manner, the trial court should: (1) grant the motion only if the evidence is so insubstantial as to require that a jury verdict for the non-moving party be set aside, or (2) deny the motion if there is substantial evidence to support a jury verdict for the non-moving party. *Farm Bur. Mut. Ins. Co.* v. *Henley*, 275 Ark. 122, 628 S.W.2d 301 (1982). Substantial evidence is that which is of sufficient force and character that it will compel a conclusion one way or another. It must force or induce the mind to pass beyond a suspicion or conjecture. *Id.* Here, there was substantial evidence that: (1) Kinco, through its employee, concealed from Schueck the fact that it was competing against him, (2) Schueck would never have disclosed its prices to a known competitor, (3) Kinco used knowledge of Schueck's prices to underbid him, (4) Kinco added its profit to Schueck's price and then intentionally misled the architects when they tried to determine if Schueck had padded its price for the additional wall panel, (5) Kinco submitted confusing comparisons between wall panels concerning custom color and warranty, (6) Kinco's actions as evidenced by its employee's memorandum were not in good faith, (7) Kinco told the architects that if Schueck's product was used then the architects would have to deal with Schueck directly, and (8) these actions caused the ter-

mination of Schueck's valid expectancy and he suffered damages. Therefore, the trial judge correctly refused to grant a directed verdict.

Appellant's second point is that even if it did interfere with appellee's expectancy, such interference was privileged and the lower court erred in refusing to direct a verdict in favor of appellant. Appellant had the burden of proof to show justification. *Stebbins & Roberts, Inc.* v. *Halsey,* 265 Ark. 903, 582 S.W.2d 266 (1979). Appellant contends that no conduct challenged by appellee rises to the level of wrongful or improper competition because appellant's submission of a lower price saved the school district money.

The Restatement 2d of Torts § 767 comment (e) (1977) provides that if a social interest is advanced by someone who interferes with an expectancy, the conduct will be less likely to be considered improper. In *Walt Bennett Ford, Inc.* v. *Pul. Co. Spl. Sch. Dist.,* 208 Ark. at 214-B, 624 S.W.2d at 430, we stated that "an impersonal or disinterested motive of a laudable character may protect the defendant in his interference. This is true particularly where he seeks to protect a third person toward whom he stands in a relation of responsibility. . . ." In that case, school directors, in good faith, were trying to protect the school district. Here, the appellant, without good faith and for its own benefit, gained an unfair advantage by sharp and overreaching actions. There is no privilege for self-enrichment by devious and improper means.

We do clearly recognize a privilege to compete. The scope of this privilege is discussed by Prosser:

> In short, it is no tort to beat a business rival to prospective customers. Thus, in the absence of pro-hibition by statute, illegitimate means, or some other unlawful element, a defendant seeking to increase his own business may cut rates or prices, allow discounts or rebates, enter into secret negotiations behind the plaintiff's back, refuse to deal with him or threaten to discharge employees who do, or even refuse to deal with

third parties unless they cease dealing with the plaintiff, all without incurring liability.

W. Prosser, *Law of Torts*, § 130 (3rd ed. 1971).

The Restatement Second on Torts defines the circumstances under which competition will justify interfering with another's business expectancy. Section 768 provides:

> (1) One who intentionally causes a third person not to enter into a prospective contract relation with another who is his competitor or not to continue an existing contract terminable at will does not interfere improperly with the other's relation if
>
> (a) the relation concerns a matter involved in the competition between the actor and the other and
> (b) the actor does not employ wrongful means and
> (c) his action does not create or continue an unlawful restraint of trade and
> (d) his purpose is at least in part to advance his interest in competing with the other.

Restatement (Second) of Torts § 768 (1977).

The trial court correctly refused to grant a directed verdict because there was substantial evidence from which the jury could find that appellant employed wrongful means to interfere with appellee's expectancy.

Appellant's efforts were not directed toward fair competition. They were directed toward unfair evasion of competition.

Affirmed on direct appeal.

ADKISSON, C.J., dissents.

HAYS, J., *not participating*.

RICHARD B. ADKISSON, Chief Justice, dissenting. It is

undisputed that the architect was not authorized to create a business expectancy for Schueck by assuring Schueck that its product would be used. A business expectancy never existed. Schueck had only a hope that its product would be used. This hope was mostly based on the fact that the architect had given Schueck an advantage by using its product to write the specifications.