William Patrick FLYNN *v.* McILROY BANK & TRUST COMPANY

85-61                                     697 S.W.2d 114

Supreme Court of Arkansas
Opinion delivered October 14, 1985

*Jeff Staton*, for appellant.

*Everett & Whitlock*, by: *John C. Everett*, and *Pettus & Johnson*, by: *E. Lamar Pettus*, for appellee.

ROBERT G. SERIO, Special Justice. Appellant filed suit against appellee in the Washington County Circuit Court wherein he alleged the appellee committed slander and intentionally interfered with his contract of employment. At the close of the appellant's case the court directed a verdict in favor of the appellee on the intentional interference cause of action. The jury held against the appellant on the slander count.

On appeal the appellant argues five points for reversal. He argues: (1) the court erred in directing a verdict on the matter of interference with an existing contractual relationship, (2) the court erred in its evidentiary treatment of a memorandum, (3) the court erred in refusing to allow the appellant to impeach a witness with a prior inconsistent statement under oath, (4) the court erred in refusing to submit the issue of punitive damages to the jury, and (5) the court erred in refusing to allow a witness to be

questioned about advice given by the witness to appellee.

The facts revealed that appellant's bank account at appellee bank in Fayetteville was being used in a fraudulent check cashing scheme. Appellee notified appellant's employer, Systematics, Inc., of the possible involvement of appellant. Appellant was fired from his job. Appellant contended he was fired because appellee had stated to Systematics that appellant's signature on his signature card at the bank matched the signature on the forged checks. Appellee denied having made such a statement and alleged that appellant was fired for other reasons.

The crux of appellant's case centered on a document prepared by John Wyatt, a supervisor for Systematics. The document contained information related to him by Don Hahn, another supervisor for Systematics. The information came from Mr. Hahn's conversations with appellee.

At the discovery deposition of Mr. Hahn, he was shown the document and after reviewing it he indicated that the statements in the document were correct. The key statement in the document prepared by Systematics was:

> McIlroy was upset because evidence seemed to sug-gest that one of our employees, Mr. Pat Flynn, was involved in this scheme. In support of their allegations, McIlroy said:
>
> 1. That the endorsements on the fraudulent checks matched the signature card on file for Pay Flynn's account which had only recently been opened.

At trial Mr. Hahn first testified that he could not remember exactly the conversation between him and appellee's employees. He finally testified that no employee of appellee stated to him that the signature on appellant's signature card matched the signatures on the forged checks.

Appellant attempted to introduce the document at trial on several occasions under various exceptions to the hearsay rule. The trial court denied the introduction each time.

We find reversible error only in Point III of the appellant's argument. The appellant argues that the trial court erred in refusing to allow appellant to impeach Mr. Hahn with the

statement in his deposition in which he had indicated that the statements in the document were correct. The appellant contends that the document is a prior inconsistent statement made by Mr. Hahn. The appellee objected to the use of Mr. Hahn's deposition on the basis that it referred to the document that had previously been refused as evidence. The court sustained appellee's objection.

We believe the use of the deposition was proper to show a prior inconsistent statement. We find that the document prepared by Mr. Wyatt was approved by Mr. Hahn and became part of his testimony at his deposition. Mr. Hahn read the document before it was typed, made no corrections in it, and then placed it in appellant's employee file.

In *United States* v. *Rogers*, 549 F.2d 490, (8th Cir. 1976), the Eighth Circuit Court of Appeals ruled that "[a] statement's inconsistency may be determined from the circumstances and is not limited to cases in which diametrically opposite assertions have been made." Judge Weinstein also endorses the view that a prior statement should be admitted "whenever a reasonable man could infer on comparing the whole effect of the two statements that they have been produced by inconsistent beliefs." 4 Weinstein's Evidence § 801(d)(1)(A) [01]. See Perroni, *Impeachment of One's Own Witness by Prior Inconsistent Statements Under the Federal and Arkansas Rules of Evidence*, 1 UALR L.J. 277 (1978). Hahn's deposition testimony affords considerable indication that the fact in question was different from his trial testimony.

Hahn's prior statement would formerly have been admissible only for the purpose of impeachment. That limitation, however, has been removed by URE 801(d)(1), which provides that a prior statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is inconsistent with his testimony. In civil cases this rule effectively allows all prior inconsistent statements to be introduced as substantive evidence in addition to any impeachment value they may have. *Hawthorne* v. *Davis*, 268 Ark. 131, 594 S.W.2d 844 (1980); *David* v. *State*, 269 Ark. 498, 601 S.W.2d 864 (1980); Reynolds, *Arkansas Uniform Rules of Evidence*, p. 157. We hold that appellant

should have been allowed the impeach the witness with his deposition and that the jury should have been allowed to consider the prior inconsistent statement as substantive evidence of the fact in dispute.

As to Point II, we find that the witness Don Hahn had sufficient recollection of his conversations with appellee so that under the circumstances of this case the document in question was not required to refresh his memory.

We next consider Point I of appellant's argument. In the past we have applied various standards of evidence necessary to support a directed verdict. In *Downey* v. *Jones Mechanical Contractors*, 273 Ark. 207, 619 S.W.2d 614 (1981) we sought to resolve the confusion as to the standard of evidence necessary to sustain a directed verdict. In *Downey, supra* at 209, we pointed out that the "no evidence" and the "slight evidence" standards should not be applied; rather, the "any [substantial] evidence" standard should be applied in determining if the directed verdict is proper. In *Downey, supra* at 211, we also cited with approval the following standard that we have previously set forth in *Jackson* v. *McCuiston*, 247 Ark. 862, 448 S.W.2d 33 (1969):

> [I]n resolving the propriety of the directed verdict, we must of course take the view of the evidence most favorable to the plaintiffs and see if there is *any substantial evidence on which the jury could have based a finding of negligence.* (Emphasis Supplied.)

Substantial evidence has been defined as meaning evidence that would enable the jury to reach its conclusion without having to resort to speculation or conjecture, *Brown* v. *State*, 278 Ark. 604 at 605, 648 S.W.2d 67 (1983).

In light of the above evidentiary holding in this case, we reverse the previously entered directed verdict and remand the intentional interference with an existing contractual relation cause of action. On remand the trial judge will consider all the evidence presented to determine if there is any substantial evidence to support a claim.

We find no merit in the appellant's argument that the trial court erred when it refused to instruct the jury on punitive damages. In order to support an award of punitive damages in a

non-media slander case involving a private figure there must be ill will, malice or bad intent on the part of the defendant towards the plaintiff. *Dillard Department Store* v. *Felton*, 276 Ark. 304, 634 S.W.2d 135 (1982).

We need not address the appropriateness of the trial court's refusal to allow the appellant's witness to answer a question proposed by the appellant. The appellant made no proffer of the witness' response to the proposed question; therefore, it is a matter of mere speculation as to how the witness would have responded. We have long held that where an objection to the questioning of a witness is sustained and there is no proffer of the witness' testimony, then there is no error to consider on appeal because the appellate court would have to speculate as to the answer the witness would have given, *Dixon* v. *State*, 228 Ark. 430, 307 S.W.2d 792 (1957), *Galloway* v. *State*, 258 Ark. 352, 524 S.W.2d 617 (1975); *Phillip* v. *State*, 266 Ark. 885, 587 S.W.2d 84 (1979).

For the foregoing reasons the judgment of the trial court is reversed and remanded with directions to proceed in a manner consistent with this opinion.

Reversed and remanded.

PURTLE AND NEWBERN, JJ., not participating.

HAYS, J., dissents.

STEELE HAYS, Justice, dissenting. Without discussion, the majority opinion assumes, incorrectly I believe, that if the trial judge had ruled differently on the impeachment evidence (point three in the majority opinion) there would be substantial evidence of an intentional interference with appellant's contract of employment and, therefore, the directed verdict for the defendant (appellee) was improper. I disagree with that conclusion and I think the issue deserves more careful treatment than it receives in the majority opinion.

Even if the impeachment proof were allowed, the plaintiff (appellant) failed to produce substantial evidence that the appellee either intended or caused him to lose his job. Both are essential elements of the cause of action. Prosser and Keeton on Torts, 5th Edition, § 129, p. 989. Restatement of Torts, § 766.

*Stebbins & Roberts, Inc.* v. *Halsey*, 265 Ark. 903, 582 S.W.2d 266 (1979); *Walt Bennett Ford, Inc.* v. *Pulaski County Special School District*, 274 Ark. 208, 624 S.W.2d 426 (1981). In *Mason* v. *Funderburk*, 247 Ark. 521, 446 S.W.2d 543 (1969) we cited the following language with approval:

> It has now come to be the view of a majority of courts in this country that one who maliciously or without justifiable cause induces a person to breach his contract with another may be held responsible to the latter for the damages resulting from such breach. The term 'maliciously' in this connection alludes to malice in its technical legal sense, that is, the intentional doing of a harmful act without justification or excuse, and does not necessarily include actual malice, that is, malice in the sense of spite or ill will.

It is true that the requirement of malice or spiteful intent has been relaxed, *Stebbins & Roberts, Inc.* v. *Halsey, supra*, but an *intentional* interference remains a key element which the plaintiff must prove.

Giving the appellant's proof its highest probative value, it still fails to create a fair inference that the bank sought to breach the employment agreement between Systematics and the appellant. The bank was being made the victim of a "cash-back" scheme which undisputedly involved the appellant's account and the appellant admittedly had withdrawn (by A-T-M machine) some $1,500 above what he knew to be the correct balance of his own deposits. In that situation there ought to be no actionable conduct on the bank's part in making reasonable inquiries concerning the depositor whose account was involved.

But whatever may be said of the proof on the issue of intent, there is not a shred of evidence, even from the appellant, that his discharge by Systematics was due to anything other than his *admitted* withdrawal of money that did not belong to him. The case was submitted to the jury on the defamation issue and I believe the trial court was correct in directing a verdict on the issue of intentional interference.