IRMAGARD K. CORBIN *v.* SPECIAL SCHOOL
DISTRICT OF FORT SMITH

5-5537                                    465 S. W. 2d 342

Opinion delivered April 5, 1971

*Warren & Bullion,* for appellant.

*Pearce, Robinson & McCord,* for appellee.

J. FRED JONES, Justice. Mrs. Irmagard K. Corbin taught school in the Special School District of Fort Smith under a contract running from August, 1969, to May 29, 1970. On June 1, 1970, she was advised by the school board that she would not be employed for the ensuing school year. Mrs. Corbin filed a complaint in the Sebastian County Circuit Court for a declaratory judgment holding the district subject to, and in violation of, the provisions of the Administrative Procedure Act (Ark. Stat. Ann. §§ 5-701—5-714 [Supp. 1969]) She contended that the regulations promulgated by the board under which her contract was not renewed were void, and that she is still an employee of the district under her teacher's contract. She sought judgment for salary allegedly due her and for an order reinstating her as a teacher in the Fort Smith Special School District.

The school board demurred to the complaint, the demurrer was sustained by the trial court and the complaint dismissed. On her appeal to this court Mrs. Corbin relies on the following points for reversal:

"The Arkansas Administrative Procedures Act applies to the adoption of regulations by School Districts.

The Board has no authority to adopt the regulation disqualifying plaintiff from teaching.

A School Board may not terminate a teacher arbitrarily."

In January, 1970, the board of directors of the district adopted a resolution which reads as follows:

"The spouse of the superintendent, the assistant superintendent, and the director of finance and business affairs shall not be employed by the Fort Smith Schools in any capacity."

Mrs. Corbin is the wife of Chris D. Corbin, the superintendent of schools in Fort Smith. Mrs. Corbin taught in the Fort Smith Schools from September, 1963,

through May, 1966. She took a leave of absence; obtained a master's degree, and was re-employed as an elementary teacher by the Fort Smith School District under a written contract for the school year 1969-70. The contract was for the period from August 25, 1969, to May 29, 1970, at a total salary of $8,132, to be paid in monthly installments. The contract provided for termination by either party "pursuant to the Continuing Contract Law (Ark. Stat. Ann. § 80-1304 [Supp. 1969])."

On June 1, 1970, the Fort Smith School Board notified Mrs. Corbin of its intent not to re-employ her in a letter reading as follows:

"In conformity with the Arkansas continuing contract law, I am notifying you that on May 11 the Fort Smith School Board voted not to renew your contract for the school year 1970-71.

The Board stated as a reason for not renewing the contract that it would be against School Board policy. The policy referred to was presented and voted on at the January 26, 1970, meeting of the Board and is as follows:

'The spouse of the superintendent, the assistant superintendent, and the director of finance and business affairs shall not be employed by the Fort Smith Schools in any capacity.' "

In her complaint Mrs. Corbin attacks the resolution of the board on the grounds that it was not adopted in the manner as required by the provisions of the Arkansas Administrative Procedure Act (Ark. Stat. Ann. §§ 5-701—5-714 [Supp. 1969]). The demurrer filed by the school board alleges that the complaint does not state facts sufficient to constitute a cause of action.

It appears conceded by the parties that the Administrative Procedure Act (Act 434 of 1967; Ark. Stat. Ann. §§ 5-701—5-714 [Supp. 1969]) applies only to *state*

*agencies.* So, the question presented under the appellant's first point is whether the Special School District of Fort Smith is an "agency" within the meaning of the Act. We agree with the trial court that it is not. "Agency," as defined in § 1 (a) of Act 434 and as digested in § 5-701 (a), is as follows:

> " 'Agency' means each board, commission, department, officer, or other authority of the *government of the State of Arkansas,* whether or not within or subject to review by another agency, except the General Assembly, the courts, and the Governor. Nothing in this Act shall be construed to repeal delegations of authority as provided by law. Provided, the word 'agency' as used in this Act shall not include the Arkansas Public Service Commission, the Arkansas Commerce Commission, the Arkansas Pollution Control Commission, the Contractors Licensing Board, the State Health Board and the Arkansas Workmen's Compensation Commission, it being hereby determined by the General Assembly that the existing laws governing such agencies provide adequate administrative procedures for said agencies." (Emphasis supplied).

It is obvious that the primary purpose of Act 434 of 1967 was to consolidate and recodify the provisions of Act 183 of 1953 and Act 103 of 1963, because § 16 of Act 434 of 1967 provides as follows:

> "All acts or parts of acts in conflict with this Act are hereby repealed, but such repeal shall not affect proceedings pending on the effective date of this Act. Without limiting the generality of the foregoing, the following acts are expressly repealed.
>
> (1) Act 103 of 1963, codified as Sections 5-701 through 5-725 of the Arkansas Statutes Annotated;
>
> (2) Act 183 of 1953, codified as Sections 5-501 through 5-505 of the Arkansas Statutes Annotated."

Act 183 of 1953 was entitled an Act to "provide

for the filing and publication of regulations of agencies, departments and branches of state government; to provide for the effect on failure to comply with the Act; to declare the inapplication of the Act; to provide an effective date; and for other purposes." This Act simply provided that:

"All agencies, departments or branches of the State government now or hereafter authorized to promulgate regulations under authority of law shall perform the following Acts before such regulation or regulations become effective:

1. File certified copies of such regulation or regulations with the following:

(a) The Governor of the State of Arkansas.
(b) The Secretary of State of the State of Arkansas.
(c) The Recorder of each County in Arkansas."

This 1953 Act then required each agency, department or branch of state government to keep on file for public inspection during regular business hours any regulations promulgated. It also provided that the Act would not apply to any agency, department or branch of the State government which would be excluded from its operation by authority of the Constitution of Arkansas or amendments thereto.

The other repealed Act, 103 of 1963, was entitled an Act to "establish uniform administrative procedures for occupational and professional licensing boards and commissions; to prescribe a uniform procedure for taking appeals from such boards and commissions; and for other purposes." Section 1 of this Act provided as follows:

"For the purpose of this Act the term 'board' shall mean and include the following:

Abstractors' Board of Examiners,
Arkansas State Board of Architects,
Arkansas Athletic Commission * * *."

Then follow 26 other designated boards and commissions, none of which included the board of directors of local school districts. Section 1 of this Act did end, however, with the following two paragraphs:

"Any other state board, commission or agency hereafter created with authority to exercise control over the licensing of any occupation or profession, unless it is expressly excepted in whole or in part from the provisions of this Act.

Provided that all licensing boards in existence on the effective date of this Act and not specifically enumerated herein shall be exempt from the provisions of this Act."

While Act 103 of 1963 defined the designated boards and commissions under the term "board," Act 434 of 1967 uses the term "agency" to mean each board, commission, department, officer or other authority of the *government of the State of Arkansas,* whether or not within or subject to review by another agency, except the General Assembly, the courts, and the Governor.

We are of the opinion, and so hold, that the Uniform Administrative Procedure Act applies only to state agencies; that local school districts are political subdivisions of the state and are not state agencies within the meaning of the Act. *(Muse* v. *Prescott School District,* 233 Ark. 789, 349 S. W. 2d 329).

As to appellant's second point, we do not share the appellant's interpretation of the effect the regulation adopted by the board had on Mrs. Corbin's qualifications for teaching. All the resolution amounted to, as we interpret it, was an agreement between the members of the board, and announcement in the form of the resolution, that the board would not employ the spouse of a superintendent, assistant superintendent or the director of finance and business affairs. This resolution had nothing whatever to do with Mrs. Corbin's qualifications to teach; it had no more effect on Mrs. Corbin's qualifications to teach than it did on Mr.

Corbin's qualifications to serve as a school superintendent. By the board's compliance with its resolution, the only effect it had on the Corbins was to prevent both of them being employed in the Fort Smith Special School District at the same time, with one of them being employed as superintendent, with the attending superintending control over the other.

The appellant argues that the legislature has delegated no such broad powers to boards of directors of school districts that would enable such boards to set standards of qualification of teachers inconsistent with that fixed by the legislature. We agree with the appellant in this argument, but that is not the case before us. As already stated, the resolution complained of did not go to the qualifications of the teacher at all—it went to the district board's discretion in the employment of teachers and other necessary employees as authorized in § 80-509 (d) (Supp. 1969), and in doing all things necessary and lawful for the conduct of an efficient free public school or schools in the district as authorized by subsection (m) of the same section.

In *Pugsley* v. *Sellmeyer*, 158 Ark. 247, 250 S. W. 538, the board of directors of a school district had adopted, and required the enforcement of, a set of rules, one of which forbade the use of paint or cosmetics by female students. An 18 year old female student appeared in school wearing "talcum powder" on her face and she was denied admittance until she complied with the rules. While the rules were suspended by the board during the pendency of the appeal, in upholding the authority of the board in making such rules, this court at page 252 of the Arkansas Report said:

"The question therefore is not whether we approve this rule as one we would have made as directors of the district, nor are we required to find whether it was essential to the maintenance of discipline. On the contrary, we must uphold the rule, unless we find that the directors have clearly abused their discretion, and that the rule is not one reasonably calculated to effect the purpose intended, that is,

of promoting discipline in the school, and we do not so find."

We see no reason why the same reasoning should not apply in the case at bar. We are of the opinion, and so hold, that the board had the authority to adopt and enforce the resolution as incidental to its unquestioned and specifically delegated authority to hire teachers and "do all things necessary and lawful for the conduct of an efficient free public school . . . in the district."

In *Safferstone* v. *Tucker*, 235 Ark. 70, 357 S. W. 2d 3, this court said:

"The law involved appears to be well settled. In this State a broad discretion is vested in the board of directors of each school district in the matter of directing the operation of the schools and a chancery court has no power to interfere with such boards in the exercise of that discretion unless there is a clear abuse of it and the burden is upon those charging such an abuse to prove it by clear and convincing evidence."

And in *White* v. *Jenkins*, 213 Ark. 119, 209 S. W. 2d 457, we said:

"It is well settled that courts may not intervene to control matters in the discretion of administrative bodies such as school boards, in the absence of a showing of an abuse of such discretion. Necessarily, some latitude in the exercise of this discretion must be given to these boards. They represent the people of the locality affected and naturally are closer to the problems to be solved than any court or other agency could be."

The board having the authority to exercise its discretion, the question then, is whether the action taken by the board in the case at bar was arbitrary, unreasonable, capricious, wrongful, discriminating or oppressive. We cannot say from the record before us

that it was. The board of directors was elected by the people of the district and was charged with the responsibility of hiring superintendents, teachers and other necessary employees, and in doing all things necessary and lawful for the conduct of an efficient free public school in the district.

What effect the employment of the spouse of a superintendent who would work under his supervision would have on the morale and efficiency of other teachers, and the efficient conduct of a free public school the board was required to maintain, we do not know; nor are we required to ascertain. We find no evidence in the record that the board abused its discretion, and we hold that the trial court was correct in refusing to interfere with the exercise of the discretion of the board in matters confided to its judgment.

As to appellant's third point, the language of the statute as well as that of the contract is plain. Ark. Stat. Ann. § 80-1304 (b) (Supp. 1969) provides as follows:

"Every teacher in the State shall be employed by written contract. In districts which include cities of 10,000 or more population, according to the last Federal census, school boards may elect the superintendent for a period not to exceed 3 years. In other school districts employing a superintendent, school boards may elect the superintendent for a period of not to exceed 2 years. All other teachers and personnel of school districts shall be employed by written contract annually.

\* \* \*

Every contract of employment hereafter made between a teacher and a board of school directors shall be renewed in writing on the same terms and for the same salary, unless increased or decreased by law, for the school year next succeeding the date of termination fixed therein, which renewal may be made by indorsement on the existing con-

tract instrument; *unless during the period of such contract or within ten (10) days after the termination of said school term, the teacher shall be notified by the school board in writing delivered in person or mailed to him or her at last and usual known address by registered mail that such contract will not be renewed for such succeeding year,* or unless the teacher during the period of the contract or within ten (10) days after close of school shall deliver or mail by registered mail to such board his or her written resignation as such teacher, or unless such contract is superseded by another contract between the parties. Provided that no contract for the succeeding school year shall be entered into between the school board and any person prior to the beginning of the second semester of the current school year. If a teacher quits or refuses to teach in accordance with his or her contract without just cause, he or she is hereby prohibited from teaching elsewhere during the time for which he or she had been employed. Provided, that nothing herein shall prohibit any school board from entering into a two [2] year or three [3] year contract as authorized in the first paragraph of this subsection." 'Emphasis supplied).

The contract between Mrs. Corbin and the district provides as follows:

"TIME: The time period covered by this contract is: 9 Months of school; 182 Days of school; 9+ Calendar months; From August 25, 1969, to May 29, 1970.

\*   \*   \*

TERMINATION: By either party pursuant to the continuing contract law (80-1304)."

Mrs. Corbin's contract expired by its terms on May 29, 1970. It could have been automatically renewed by endorsement for an additional term, had not Mrs. Corbin or the district given notice to the other during the

term of the contract, or within 10 days after its termination, that the contract would not be renewed for the ensuing year. The board of directors of the district did notify Mrs. Corbin on June 1, 1970, (within 10 days after the termination of her contract) that the contract would not be renewed.

We are of the opinion that Mrs. Corbin's rights in this case are governed by her contract and the statutory law relating thereto, and not on "an expectancy of continued employment" by the Fort Smith Special School District while her husband is superintendent of schools in that district.

The judgment is affirmed.