# WORTH JAMES CONSTRUCTION COMPANY *v.* JACKSONVILLE WATER COMMISSION et al

79-278                                590 S.W. 2d 256

Opinion delivered December 3, 1979
(In Banc)
[Rehearing denied January 7, 1980.]

*Friday, Eldredge & Clark,* for appellant.

*Paul D. Groce,* for appellees.

GEORGE ROSE SMITH, Justice. This is a suit by the appellant, Worth James Construction Company, to enjoin the Jacksonville Water Commission from awarding a construction contract to S & S Construction Company (also a defendant). Worth James contends that it should be awarded the contract, because it was admittedly the low bidder among the six contractors bidding for the job. The chancellor denied relief on several grounds, one of them being that Worth James has no standing to sue and another that the Commission was justified, in the city's best interest, in not awarding the contract to the lowest bidder.

The letting of the contract was governed by Ark. Stat. Ann. § 14-612 (Repl. 1979). That statute, as we have said about a different law, does not provide "that the contract shall be let to the person whose bid is lowest in terms of money." *Street Improvement Dist. No. 130 of Hot Springs* v. *Crockett,* 181 Ark. 869, 28 S.W. 2d 331 (1930). Instead,

the present statute directs that the advertisement for bids contain a statement (as this one did) that the Commission reserves the right "to reject any or all bids." The statute also provides that after the Commission has opened and compared the bids, it shall award the contract to the lowest responsible bidder, "provided that [the Commission] be of the opinion that the best interests of the taxing unit would be served thereby." Here the advertisement for bids tracked that provision by reciting that the Commission reserved the right "to accept the proposal which will best serve the interest of the City of Jacksonville."

The contract was for the construction of more than two miles of 24-inch water line and almost one mile of 12-inch water line. The specifications provided that the pipe to be furnished by the contractor might be ductile iron pipe, prestressed concrete pipe, or pretensioned concrete pipe. The Commission's consulting engineers supplied the bidding forms, which contemplated that each bidder would insert in appropriate blanks a price per foot for at least one kind of pipe, extend the lowest unit price for the total footage, and include the resulting figure in the total bid. There were some 20 other items in addition to the pipe, but it is readily apparent that the bottom-line total was the important figure, since the constituent prices might be adjusted by the bidder pretty much at will.

The bids were opened on May 11, 1979. The figures were compiled in detail and certified by the Commission's engineers. The Worth James bid of $707,586.17 was the lowest of the six bids. Worth James had selected pretensioned concrete pipe for the 24-inch line and ductile iron pipe for the 12-inch line. The appellee S & S's bid of $714,755.10 was the third lowest bid, but it was the lowest bid specifying ductile iron pipe throughout. (The difference in the two bids lay in the other items, as the S & S bid was actually lower than that of Worth James for each of the three kinds of pipe. This is not really material, however, as it was the grand total that mattered. The only significance of the per-foot unit prices seems to stem from a clause stating that in the final settlement the total bid price will be adjusted for variations from the quantities listed on the form supplied to the bidders.)

After the opening of the bids on May 11, the three Commissioners met on May 16 to award the contract. The Commission's manager presented a statement strongly recommending the use of ductile iron pipe, because (a) both management and maintenance personnel had working experience with it, (b) it is a proven material in Arkansas, and (c) there is about 40,000 feet of existing ductile iron pipe in the Jacksonville Water System, which was stated to be a very important consideration in view of there being ductile iron maintenance equipment already on hand. The statement recognized that pretensioned concrete pipe was acceptable and in conformity with the specifications, but the manager thought that the $7,186.93 difference between the two bids (about 1%) could be justified for the reasons he gave. Of course, as Worth James points out, all those matters could have been determined before the specifications and bidding forms were prepared. The manager testified at the hearing below that if the difference between the two bids had been $100,000 instead of about $7,000, he could not have justified the use of iron pipe.

At the Commission meeting on May 16, one of the three commissioners moved that the contract be awarded to S & S on the basis of its use of ductile iron pipe. The motion was seconded, but upon an objection by the Worth James attorney, the motion was tabled to permit the Commission's counsel to research the law. A week later the commissioners met again and were advised by counsel that they could select any bid. They unanimously awarded the contract to S & S. This suit was filed two days later, on May 25.

The chancellor rested his decision in part upon a finding that Worth James has no standing to maintain the suit. The chancellor relied upon *Arkansas Democrat Co.* v. *Press Printing Co.*, 57 Ark. 322, 21 S.W. 586 (1893), and *Bank of Eastern Ark.* v. *Bank of Forrest City*, 94 Ark. 311, 126 S.W. 837 (1910), both holding that the low bidder on a public contract has no standing to question an award to a higher bidder, because the laws requiring competitive bidding are passed for the benefit of the public and can be enforced only at the instance of a taxpayer (or here a ratepayer, as the water line is to be financed by revenue bonds).

We think it best not to explore the question of standing, because an affirmance on that ground might not preclude the maintenance of a rate payer's suit, with attendant delay. The parties and their counsel have expedited this case, doubtless because incessant inflation is a threat both to the city and to the successful bidder. The entire litigation has taken less than seven months. We have no inclination to decide the case upon a ground that might result in delay.

The chancellor found, upon the merits, that "the proof fails to even suggest that in making this contract award to S & S, [the Commission] acted in bad faith, with favoritism, or for any reason except a determination that [the use of iron pipe] was in the best interest of the City. I conclude the statute gives it this discretion, and that this determination is neither unlawful or arbitrary." There is actually no evidence to the contrary; so the issue narrows down to one of law.

As we have seen, both the statute and the advertisement for bids gave notice that the Commission could reject any or all bids and that the Commission reserved the right to accept the bid that would best serve the interest of the city. There is much authority to support the view that the Commission acted within the limits contemplated by the statute. The following statement in an annotation on the subject in 27 A.L.R. 2d 917, 924 (1953), is supported by many citations:

> Where the public officials have the right to reject any and all bids for a public contract, the view is generally taken that they may consider the differences or variations in the character or quality of the materials, articles, or work proposed to be furnished by the various bidders, in determining whether to accept any of the bids, or which bid to accept.

Of course the rejection of the lowest bid must be, as it was here, for good cause and in good faith.

Worth James's real grievance, one that has given us much concern, is that the Commission should have asserted its preference for ductile iron pipe at the very beginning, by requiring truly alternate bids (as North Little Rock did in the

letting of a companion contract for part of the same project). *See* McQuillin, Municipal Corporations, § 29.55 (3d ed., 1966 revision). Instead, the forms for bidding led the bidders to believe that the Commission had no preference among the three specified kinds of pipe. Had Worth James known about the preference for iron pipe, it might, it argues, have submitted an overall bid with a lower figure than the one it inserted as its unit price for 24-inch iron pipe.

Even so, we are unwilling to say as a matter of law that in the circumstances the Commission was without any choice except to accept the Worth James bid, which specified pretensioned concrete pipe. The fact remains that Worth James *did* insert in its bid a figure for ductile iron 24-inch pipe, which, if extended, would have made its bid $74,558.17 more than the one submitted by S & S. Moreover, Worth James has made no offer in its pleadings or testimony to supply iron pipe either for the amount of its own bid or for that of the S & S bid. Thus we cannot say with confidence that Worth James was actually misled to its detriment.

Affirmed.

HARRIS, C.J., not participating.

BYRD, J., dissents.