## WALT BENNETT FORD, INC. *v.* PULASKI COUNTY SPECIAL SCHOOL DISTRICT; Bill CANADY, Purchasing Director; Bill GLADDEN, Comptroller and Members of the School Board of Pulaski County Special School District

81-112                    624 S.W. 2d 426

### Supreme Court of Arkansas
Opinion delivered November 2, 1981
[Supplemental Opinion on Denial of Rehearing December 14, 1981.]

*Gill, Skokos, Simpson, Buford & Owen* and *Mitchell, Williams, Gill & Selig,* for appellant.

*Henry J. Osterloh,* for appellees.

ROBERT H. DUDLEY, Justice. Appellant Walt Bennett Ford, Inc. filed this suit in chancery court after appellee school district refused to award appellant a contract for the sale of 18 school buses. The complaint states two distinct causes of action against different defendants. The first count sounds in contract and seeks to void the contract between appellee district and the successful bidder, although the latter is not made a party. The second count is a tort suit directly against individual board members and purchasing officers of the district for an alleged tortious interference with business relations. Obviously the parties sought a prompt trial and chose not to file motions questioning pleadings, parties or jurisdiction and we decide the case only on the issues presented to us.

The pertinent facts are as follows. Appellee school district advertised for bids on 18 school buses. A number of bids in reply were received with the Jim Nabors Company, Inc. being the lowest. After the bids were opened, but before the contract was awarded, appellant filed a written protest with appellee school district contending that Nabors was not a franchised dealer and could not give a valid warranty of repairs for the vehicles, was not a licensed vehicle dealer as required by Ark. Stat. Ann. Title 75, Chapter 23, Vol. 6B (Repl. 1979), had not claimed, and was not now entitled to claim, the five percent preference for Arkansas residents pursuant to Ark. Stat. Ann. § 14-293 (Repl. 1979) and that appellant alone had submitted a written request for the preference, all of which made appellant the acceptable low

bidder. Nabors was then allowed to submit a letter claiming the five percent preference and in addition was allowed to proceed as the agent of a franchised and licensed vehicle dealer, Moore Ford. Appellee school district later awarded the contract to Nabors as agent for Moore Ford and appellant filed suit to void the contract. The record does not reveal whether the contract is executed or is executory. It only reveals that at some unspecified date appellee district paid Nabors $191,605.34, but we do not know if any or all of the buses have been delivered and placed into service.

The chancellor held that appellant Walt Bennett had no standing to sue. The chancellor relied on our holdings in *Arkansas Democrat Co.* v. *Press Printing Co.*, 57 Ark. 322, 21 S.W. 586 (1893) and *Bank of Eastern Arkansas* v. *Bank of Forrest City*, 94 Ark. 311, 126 S.W. 837 (1910), both holding that the low bidder on a public contract has no standing to question an award to a higher bidder, because the laws requiring competitive bidding are passed for the benefit of the public and can be enforced only at the instance of a taxpayer. See *Worth James Construction Co.* v. *Jacksonville Water Com'n.*, 267 Ark. 214, 590 S.W. 2d 256 (1979). Appellant asks us to overrule those earlier decisions.

This court has the power to overrule a previous opinion, *Gregg* v. *Road Improvement District No. 2*, 169 Ark. 671, 277 S.W. 515 (1925), but it is necessary, as a matter of public policy, to uphold prior decisions unless a great injury or injustice would result. *Rhea* v. *State,* 104 Ark. 162, 147 S.W. 463 (1912). There is a strong presumption of the validity of prior decisions. *Roane* v. *Hinton,* 6 Ark. (1 Eng.) 525 (1846). Even though we have afforded the proper presumptions to our prior cases on standing we are convinced that they should be overruled. We are satisfied that continuing to deny an unsuccessful bidder the standing to sue for an alleged wrong is to minimize protection of the public interest. On the other hand, the most practical way to protect the public interest is to allow unsuccessful bidders to seek judicial review of any alleged wrong in the contracting procedure.

The better reasoning is stated in *Scanwell Laboratories,*

*Inc.* v. *Shaffer,* 424 F. 2d 859 (D.C. Cir. 1970):

> This is a powerful argument for allowing the plaintiff . . . standing to challenge the governmental action of which it complains . . . . If there is any arbitrary or capricious action on the part of any contracting official, who is going to complain about it, if not the party denied a contract as a result of the alleged illegal activity? It seems to us that it will be a very healthy check on governmental action to allow such suits . . .

We hold that an unsuccessful bidder does have standing to sue for alleged wrongs and on that point overrule our prior cases of *Arkansas Democrat Co.* v. *Press Printing Co.,* supra, and *Bank of Eastern Arkansas* v. *Bank of Forrest City,* supra.

Although the chancellor held that appellant had no procedural standing he also ruled that appellee should prevail on the merits. We reverse on both issues.

The trial court found that the preference act, § 14-293, was not applicable in this case. We hold that the act is applicable because it applies to contracts of " . . . subdivisions of the state . . ." School districts are political subdivisions of the state. See *Corbin* v. *Special School District of Fort Smith,* 250 Ark. 357, 465 S.W. 2d 342 (1971).

Appellee contends that the "Arkansas Motor Vehicle Commission Act," Ark. Stat. Ann. Title 75 — Chapter 23, Vol. 6B (Repl. 1979) is not applicable to Nabors as school buses are exempted from licensing and therefore are not motor vehicles as described in that act. The fact that appellee school district is exempt from licensing does not mean that school buses are not motor vehicles. Clearly, school buses are motor vehicles. In addition, the attempt to change retroactively Nabors' status from that of a principal to that of an agent for Moore Ford after the bidding was completed cannot be allowed to stand.

We have devoted considerable time to the proper disposition of this first count. This court does not normally

remand a case to chancery court, but rather we try the case de novo and render the decree that should be rendered below. *Ferguson* v. *Green*, 266 Ark. 556, 587 S.W. 2d 18 (1979). The usual practice is to end the controversy in the court by final judgment or by directions to the trial court to enter a final decree. *Wilborn* v. *Elston,* 209 Ark. 670, 191 S.W. 2d 961 (1946). However, this rule is not imperative and this court has the power, in the furtherance of justice, to remand any case in equity for further proceedings, including hearing additional evidence. *Fish* v. *Bush,* 253 Ark. 27, 484 S.W. 2d 525 (1972). The appellant chose not to ask for a loss of profits from the appellee school district and chose not to seek an injunction but only asks to void the contract. Because we do not know if the contract is executory or executed and because one of the parties to the contract, Nabors, is not a party to this suit, it is impossible for us to know what the final decree should be. Therefore, we remand this count to the trial court for further proceedings, including hearing additional evidence, to determine whether the requested relief can be granted.

The second count of the complaint is against the board members and purchasing officers of the school district as individuals. It is alleged that they maliciously and willfully interfered with the contractual rights of appellant. This is a direct action against alleged tort-feasors. We have long recognized such an actionable tort. *Mahoney* v. *Roberts,* 86 Ark. 130, 110 S.W. 225 (1908). We have specifically recognized that school board members might suffer liability for the commission of such a tort. *Mason* v. *Funderburk,* 247 Ark. 521, 446 S.W. 2d 543 (1969). In that case we defined the tort and its elements as follows:

> The fundamental premise of the tort — that a person has a right to pursue his valid contractual and business expectancies unmolested by the wrongful and officious intermeddling of a third party — has been crystallized and defined in Restatement, Torts § 766,
> * * *

* * *

The basic elements going into a prima facie establishment of the tort are (1) the existence of a valid contractual relationship or business expectancy; (2) knowledge of the relationship or expectancy on the part of the interferor; (3) intentional interference inducing or causing a breach or termination of the relationship or expectancy; and (4) resultant damage to the party whose relationship or expectancy has been disrupted.

The appellant stated a cause of action in count two of its complaint. The chancellor rested his decision in part on a finding that appellant had no standing to maintain the suit. That ruling was erroneous because the cases on standing to sue on a public contract simply are not applicable to a direct tort action. However, the chancellor also found, upon the merits, "I have no choice but to find that the defendants [individual appellees] did not act in bad faith in rejecting plaintiff's [appellant's] bid." Unless those findings of fact are clearly erroneous we will not set them aside. Rule 52, Arkansas Rules of Civil Procedure, Vol. 3A (Repl. 1979).

It is clear that Nabors was the low bidder. Appellant claimed the resident preference on its bid form and that preference would cause it to be the successful bidder. After receiving the protest the individual appellees asked Nabors if it also was an Arkansas resident and if it also paid Arkansas taxes. Nabors wrote a letter stating that it met these requirements and was an agent of Moore Ford. The individual appellees then awarded the contract to Nabors on the basis that it was the low bidder and was entitled to the same preference as appellant. That action saved money for the taxpayers. We cannot say the chancellor clearly was in error when he ruled that the appellees did not act in bad faith. We affirm the judgment in favor of the individual appellees on the tort acton.

Affirmed in part.

Reversed and remanded in part.

PURTLE and HAYS, JJ., not participating.

Supplemental Opinion on Petition for
Rehearing delivered December 14, 1981

ROBERT H. DUDLEY, Justice. Walt Bennett Ford, Inc., has filed a petition for rehearing. We deny that petition but choose to supplement the discussion of one issue.

The lower court found that the individual appellees were not liable for the tort of interference with business expectations. In the original opinion we affirmed that ruling and one of the reasons given was that the individual appellees did not act in bad faith. The general rule is that an improper motive or bad faith is no longer an essential part of the plaintiff's case in the tort of interference with existing contractual relations. However, the defendant may show that his interference was privileged. *Stebbins & Roberts, Inc. v. Halsey*, 265 Ark. 903, 582 S.W. 2d 266 (1979). The case at bar deals with interference with a business expectation and

not an existing contract. The chief difference lies in the recognition of more extensive privileges in the case of business expectations. Prosser, Torts, § 130 (4th Ed. 1971). In either case, ". . . an impersonal or disinterested motive of a laudable character may protect the defendant in his interference. This is true particularly where he seeks to protect a third person toward whom he stands in a relation of responsibility . . ." Prosser, supra, p. 943. In this case, school directors without bad faith were trying to protect the school district. This privilege to interfer, without bad faith, was clearly set out in *Middlesex Concrete Products and Excavating Corp.* v. *The Carteret Industrial Ass'n.*, 37 N.J. 507, 181 A. 2d 774 (1962) as follows:

> Protection of the public interest has been recognized by the text writers as affording privilege to acts of interference. Prosser, Torts, p. 749, § 6.12 (1956); Restatement, Torts (2d Ed. 1955); Harper & James, The Law of Torts, § 767, comment clause (d) (1939). We are constrained to agree with the logic of that view.

Our rule announced in *Stebbins*, supra, that bad faith is no longer an essential part of the plaintiff's case in the tort of interference with contractual relations is in no manner modified or varied by our original opinion.

PURTLE and HAYS, JJ., not participating.