The Honorable Shane Broadway State Senator 201 Southeast Second Street Bryant, AR 72022-4025
Dear Senator Broadway:
I am writing in response to your request for my opinion on the following questions:
 1. May an Arkansas public school district employ its own law enforcement officers? Arkansas Code § 12-9-601(2) defines an "employing agency" of a law enforcement officer as "any state agency or any county, municipality, or other political subdivision of the state, or any agent thereof, which has constitutional or statutory authority to employ or appoint persons as law enforcement officers." I observe that Arkansas Code § 6-13-620(a)(4)(A) states that a school district may "[e]mploy teachers and other employees necessary for the proper conduct of the public schools of the district. . . ." However, Arkansas Code § 25-17-304(a) provides that "educational . . . institutions owned and operated by the State of Arkansas" may employ security officers who possess the powers of city police and county sheriffs. In your opinion, does Arkansas law currently permit a public school district to employ law enforcement officers or security officers with similar powers?
 2. If the answer to (1) is "yes," what law enforcement powers might an officer employed by a school district possess? Would an officer be authorized to make arrests on the public school campus or issue traffic citations?
RESPONSE
In my opinion, the answer to your first question is "no." Although a school district is a political subdivision of the state, its lacks any statutory authorization to exercise the police power and consequently fails to qualify as an "employing agency" authorized to hire law enforcement officers pursuant to A.C.A. § 12-9-601(2) (Repl. 2003). Your second question is consequently moot.
Question 1: May an Arkansas public school district employ itsown law enforcement officers? Arkansas Code § 12-9-601(2) definesan "employing agency" of a law enforcement officer as "any stateagency or any county, municipality, or other politicalsubdivision of the state, or any agent thereof, which hasconstitutional or statutory authority to employ or appointpersons as law enforcement officers." I observe that ArkansasCode § 6-13-620(a)(4)(A) states that a school district may"[e]mploy teachers and other employees necessary for the properconduct of the public schools of the district. . . ." However,Arkansas Code § 25-17-304(a) provides that "educational . . .institutions owned and operated by the State of Arkansas" mayemploy security officers who possess the powers of city policeand county sheriffs. In your opinion, does Arkansas law currentlypermit a public school district to employ law enforcementofficers or security officers with similar powers?
In my opinion, under Arkansas law, a public school district cannot in effect establish its own law enforcement agency by employing individuals qualified to serve as "law enforcement officers" by having completed the training program contemplated at A.C.A. § 12-9-106(a) (Repl. 2003). I believe this conclusion follows from the fact that, irrespective of whether an individual has completed the referenced training program, he cannot function as a "law enforcement officer" unless he is employed by a "law enforcement agency" — a variety of organization that does not include a school district, which has not been statutorily charged with exercising the state's police power.
As you note in your request, A.C.A. § 12-9-601(2) (Repl. 2003), which is contained in a chapter of the Arkansas Code dealing with law enforcement officer training and standards, indeed defines an "employing agency" as "any state agency or any county, municipality, or other political subdivision of the state, or any agent thereof, which has constitutional or statutory authorityto employ or appoint persons as law enforcement officers." (Emphasis added.) Subsection 12-9-102(2) of the Arkansas Code (Repl. 2003) defines the term "law enforcement officer" as follows:
 "Law enforcement officer" means any appointed law enforcement officer or sheriff who is responsible for the prevention and detection of crime and the enforcement of the criminal, traffic, or highway laws of this state, excluding only those officers who are elected by a vote of the people[.]
Omitting only the final clause, A.C.A. §§ 12-9-301(6) and 401(4) (Repl. 2003) repeat this definition verbatim. Subsection12-9-401(2) further defines the term "full-time law enforcement officer" as follows:
 "Full-time law enforcement officer" means any sheriff or officer employed by a law enforcement agency who works forty (40) or more hours per week or any part-time officer employed by a law enforcement agency who has met the selection and training requirements for full-time certified officers[.]
(Emphases added.) Subsection (3) of this statute defines the term "law enforcement agency" to mean "any police force or organization whose primary responsibility as established bystatute or ordinance is the enforcement of the criminal, traffic,or highway laws of this state." (Emphasis added.) Finally, as you also note, A.C.A. § 25-17-304(a) (Repl. 2002) provides that "educational . . . institutions owned and operated by the State of Arkansas" may employ as security officers any individuals "who shall be peace officers under the laws of this state."
Before addressing what I consider the interplay of the statutes pertinent to your specific question, I should note that the latter statute referenced in the preceding paragraph does not bear on your request. Subsection 25-17-304(a) of the Code on its face applies only to institutions "owned and operated by the State of Arkansas" — a description that does not apply to school districts. Although a school district is in many contexts considered a creature of the state, see Delta Special SchoolDistrict No. 5 v. State Board of Education, 745 F.2d 532, 532
(8th Cir. 1984), it is distinguishable from the state in being organized as a distinct "body corporate," A.C.A. § 6-13-102
(Repl. 1999), that has been recognized in many contexts as constituting a "political subdivision" of the state. DeltaSpecial School District No. 5, 745 F.2d at 532. As the court noted in Delta Special School District No. 5, id.:
 . . . Arkansas courts have decided that school districts are political subdivisions of the state. See Walt Bennett Ford, Inc. v. Pulaski County Special School District, 274 Ark. 208, 624 S.W.2d 426 (1981) (under state bidder-preference law); Corbin v. Special School District, 250 Ark. 357, 465 S.W.2d 342 (1971) (under administrative procedure act); Muse v. Prescott School District, 233 Ark. 789, 349 S.W.2d 329 (1961) (under workers compensation law); see also Ark.Stat.Ann. § 12-2901 (1979) (school district treated as political subdivision for sovereign immunity purposes).
The provisions of A.C.A. § 25-17-304(a) consequently do not apply to a school district.
Notwithstanding the fact that a school district is sometimes considered a "political subdivision" of the state — a type of entity identified in A.C.A. § 12-9-601(2) as potentially qualifying as an "employing agency" authorized to hire "law enforcement officers" — I do not believe a school district meets the statutory requirements. For one thing, I find it significant that a related subchapter of the Code dealing with the Arkansas Commission on Law Enforcement Standards and Training offers the following definition of "political subdivision," which does not include a school district within the designation:
 "Political subdivision" means any county, municipality, township or other specific local unit of general government.
A.C.A. § 12-9-102(3) (Repl. 2003). In this regard, A.C.A. §12-9-107(a) (Repl. 2003) further acknowledges that the Arkansas Commission on Law Enforcement Standards and Training will provide training for the "law enforcement officers of this state, its counties, and municipalities" — a catalogue that likewise omits any mention of school districts. Section 12-9-205 (Repl. 2003) further provides:
 Applications for attendance at the Arkansas Law Enforcement Training Academy shall be screened and approved as follows:
 (1) Applicants of the Department of Arkansas State Police shall be approved by the Arkansas State Police Commission;
 (2) Applications from sheriffs or deputy sheriffs and constables shall be approved by the Executive Committee of the Arkansas Sheriffs Association; and
 (3) Applications from any officer of a municipal police department shall be approved by the Executive Committee of the Arkansas Peace Officers' Association.
Although this catalogue is not expressly declared to be exhaustive, I believe it reflects a legislative intention that the training will be limited to individuals serving in the recited capacities.
Moreover, I am struck by the fact that in order to qualify as an "employing agency" as that term is defined at A.C.A. §12-9-601(2), an entity must independently have the "constitutional or statutory authority to employ or appoint persons as law enforcement officers." Admittedly, as you point out in your request, A.C.A. § 6-13-620(a)(4)(A) authorizes a school district to "[e]mploy teachers and other employees necessary for the proper conduct of the public schools of the district. . . ." However, although campus security is a clear requisite for the proper conduct of the public schools, providing such security through school district employees is not the equivalent of a "law enforcement agency's" employing a "law enforcement officer" to enforce the "criminal, traffic, or highway laws of this state." I believe this conclusion would apply even if the school district employee had completed the law enforcement training program referenced at A.C.A. § 12-9-106(a). Under the definition set forth at A.C.A. § 12-9-401(3), a school district could never be a "law enforcement agency" because the district's "primary responsibility" is not "law enforcement" as defined, but rather the education of students, albeit in a safe environment. Accordingly, even if an individual were qualified to serve as a "law enforcement officer" by virtue of having completed the training program established by the Arkansas Commission on Law Enforcement Standards and Training, he could only serve in that capacity if employed by a "law enforcement agency," which a school district is not.
In this regard, I will note that numerous courts in various jurisdictions have remarked that in the absence of an express legislative delegation, school districts lack the police power upon which, among other things, the hiring of true law enforcement officers would depend. See, e.g., Fort WorthIndependent School District v. City of Fort Worth,22 S.W.3d 831, 834 (Tex. 2000) ("The School District had no police power. . . ."); Parents United for Better Schools, Inc. v.School District of Philadelphia Board of Education,978 F.Supp. 197, 205 n. 9 (E.D. Pa. 1997) ("[T]he School District, in conjunction with the city, attempted to combat juvenile delinquency in an apparent exercise of a police power it lacked."); Grupe Development Co. v. Superior Court,4 Cal. 4th 911, 917 n. 3, 844 P.2d 545 (1993) ("The Constitution grants local police power only to cities and counties. . . .");California Building Industry Association v. Governing Board,206 Cal. App. 3d 212, 234 (1988) ("[T]he school districts have no such police power to support the imposition of development fees."); Village of Blaine v. Independent School District No.1, 272 Minn. 343, 355, 138 N.W.2d 32 (1965) ("School districts . . . have had no governmental police powers granted them by the legislature."); School District of Philadelphia v. Zoning Boardof Adjustment, 417 Pa. 277, 290, 207 A.2d 864 (1965) (noting a "School District's lack of police power"); Port Arthur IndependentSchool District v. City of Groves, 376 S.W.2d 330, 334 (Tex. 1964) (when legislature vested police power in city, not school district, the district could not exercise the city's powers);Board of Regents of the Universities and State College,88 Ariz. 299, 309, 356 P.2d 399 (1960) (same); Kansas City v.School District of Kansas City, 356 Mo. 364, 367, 201 S.W.2d 930
(1960) (holding that city solely vested with police power to fight fires could impose fees upon school district); compareBoard of Education of City of St. Louis v. City of St. Louis,257 Mo. 356, 184 S.W. 975, 977 (1916) (holding that where legislature had expressly vested in the school district the power to determine interior sanitary arrangements for ventilating water-closets, city regulations based upon the police power would not apply).
In my opinion, all of these cases, as well as the statutes discussed above, stand for the proposition that a school district can exercise only those aspects of the state's police power that the legislature has expressly delegated to it. As discussed above, it seems clear from the pertinent legislation that even an individual qualified to serve as a law enforcement officer by virtue of certification can serve in that capacity only if he is employed by a law enforcement agency — i.e., by an organization primarily charged with the enforcement of the criminal, traffic, or highway laws of the state. A.C.A. §§ 12-9-401(2) and (3). I do not consider the general grant set forth in A.C.A. §6-13-620(a)(4)(A), which authorizes a school district to "[e]mploy teachers and other employees necessary for the proper conduct of the public schools of the district," as in effect authorizing a school district to undertake the full range of law enforcement activities charged to "law enforcement officers" employed by a "law enforcement agency." At most, I believe this charge would enable school districts directly to employ resource officers of the sort that schools currently use to maintain order in the interests of safe and efficient education.
In the attached Ark. Op. Att'y Gen. No. 2003-001, one of my predecessors discussed in some detail the actual practice of various districts in providing security on school district campuses, concluding that certain districts avail themselves of local police resources through what appears to be an independent-contractor arrangement, possibly buffering this service with security forces that comprise true employees. Specifically, my predecessor reported:
 Based upon my inquiries, police officers apparently serve with some regularity as school resource officers, although districts vary in their policies regarding remuneration. In the Little Rock School District, police officers are reportedly assigned as school resource officers pursuant to a purchased-services contract providing that the district will pay one half of the officers' salaries. In the North Little Rock School District, police officers are reportedly assigned as school resource officers pursuant to an agreement providing that the city will continue to pay the officers' salaries. The district pays for some training and travel required to perform these services. In the Pulaski County School District, police officers reportedly serve as school resource officers within cities and deputy sheriffs serve in that capacity in the county without any payment by the district, although the district does provide some office space. See also Garcia v. State, 333 Ark. 26, 29, 969 S.W.2d 591 (1998) (without addressing the issue of remuneration, noting that a witness in a criminal trial was both a school resource officer and a Russellville police officer). Each of these districts also reportedly maintains its own security staff, which serve as the principal agents to enforce school disciplinary policy. As I understand it, the school resource officers primarily serve to deter criminal activity, to effect any necessary arrests and to expedite good relations among the police, the students and the community. In sum, the school and its environs in all respects are seen as comprising the officer's "beat."
* * *
 As a general proposition, . . . I believe that a salaried police officer might be assigned as a school resource officer in the city without compensation by the school district, so long as his duties fall within the ambit of standard police operations, including such activities as law enforcement, education regarding the law and fostering good community relations. However, as evidenced by the fact that all of the above described school districts maintain their own security staffs, at some point school discipline becomes an exclusively district matter, as it might be, for instance, in the enforcement of dress codes, hall-pass policy or misbehavior falling short of criminal activity. In my opinion, the expense of such enforcement should be properly borne by the district.
I agree with my predecessor's analysis and, given the particular focus of your request, would add only that I see no objection to a school district's directly hiring for its own security staff individuals who have been certified by the Arkansas Commission on Law Enforcement Standards and Training. However, as noted above, I believe such an individual would have the full range of law enforcement powers invested in a regular police officer only if he were in fact employed by a law enforcement agency. Assuming, for instance, that a school district had arranged with a city police department to have an officer assigned to a particular school, I believe that officer might exercise the full authority granted regular police officers while working on campus, including the power to make arrests and to issue traffic citations. By contrast, irrespective of whether an individual has been certified by the Arkansas Commission on Law Enforcement Standards and Training, I do not believe that individual may exercise such authority if he is merely an employee of the school district.
Question 2: If the answer to (1) is "yes," what lawenforcement powers might an officer employed by a school districtpossess? Would an officer be authorized to make arrests on thepublic school campus or issue traffic citations?
In light of my response to your first question, this question would appear to be moot. However, I will reiterate that, in my estimation, regardless of whether an individual has been certified by the Arkansas Commission on Law Enforcement Standards and Training, if he is a straightforward employee of a school district, he will not have the law enforcement powers of a "law enforcement officer" employed by a "law enforcement agency." In my opinion, the employee would have only the arrest power available to private individuals pursuant to A.C.A. §16-81-106(d) (Repl. 2005), which provides:
 A private person may make an arrest where he or she has reasonable grounds for believing that the person arrested has committed a felony.
Finally, the Code contains no provision authorizing employees of a school district to issue traffic tickets. Section 27-50-501
of the Code (Supp. 2005) directs that "[e]very law enforcement officer" issuing traffic tickets must use a "uniform traffic citation form" or its equivalent. Section 27-50-505 (Repl. 1994) further acknowledges that traffic tickets will be issued by a "police authority" — a term defined in subsection (a) as meaning "any municipal, county, or state police enforcement agency." Employees of a school district are not included within any of these categories.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosure