ARKANSAS ASSOCIATED TELEPHONE COMPANY
*v.* BLANKENSHIP.

4-8191                                    201 S. W. 2d 1019

Opinion delivered May 5, 1947.

646

*Barrett & Wheatley* and *Berl S. Smith,* for appellant.

*Bon McCourtney* and *Claude B. Brinton,* for appellee.

MINOR W. MILLWEE, Justice. Appellee, E. M. Blankenship, was plaintiff and appellants, Arkansas Associated Telephone Company and W. L. Bryant, were defendants in the circuit court in an action for slander. Trial before a jury resulted in a verdict and judgment in favor of plaintiff for $500 actual damages against the defendants.

Plaintiff was employed by defendant, Arkansas Associated Telephone Company, as a repair helper at Monette, Arkansas, from July, 1945, until February, 1946, when he was discharged by defendant, W. L. Bryant. Plaintiff alleged in his complaint that said W. L. Bryant, while acting within the scope of his employment as district manager of the telephone company, made slanderous statements to and concerning plaintiff in the presence of M. E. Blankenship, father of plaintiff, as follows: "What did you do with the key you took last night after you robbed this No. 40 pay station? You went in the office and took it out of her cash box and robbed this pay station and stole the money; now what did you do with the money? I don't want you in the office any more, you might steal something; I don't care how it sounds, you stole it. I found out you lied about how much a man charged you for pulling the truck out of a mud hole, he said he charged you two dollars and you turned in a voucher for four dollars, so this is two more dollars you have stole."

It was further alleged that W. L. Bryant subsequently repeated the substance of said statements in the presence of five other persons whose names were set out in an amendment to the complaint. The prayer of the complaint was for $1,500 actual damages, and $1,400 punitive damages.

In their answer defendants admitted the discharge of plaintiff, but alleged that it was for just cause. They

denied making the statements contained in the complaint and alleged that any statements made by W. L. Bryant, on the occasion mentioned, were true. In an amendment to the answer, defendants further alleged that any statements made to or about plaintiff were made in good faith, without malice and under circumstances constituting a qualified privilege.

Plaintiff is 27 years of age, married and has resided in Monette, Arkansas, most of his life. He testified that he and his father started to the telephone office on Sunday, February 24, 1946, to talk with W. L. Bryant about a paint job which the father was trying to secure with the telephone company. They met Bryant on the street in front of the telephone office and discussed the paint job and the prospects of a promotion for plaintiff with the company. In response to counsel's questions, plaintiff gave the following account of the conversation that then took place in the presence of his father: "Well, we talked about different things and as I started off, Mr. Bryant said, 'Wait a minute, Pete,' and I said, 'What is it?' and he said, 'How are you getting along with the operators now?' and I said, 'As far as I know, all right,' and he said, 'You are not having any trouble with them?' and I said, 'No, sir,' and he said to me, 'What did you do with the cash after you robbed the pay station?' and I said, 'I don't have the key to the pay station.' He said, 'You went in the office and went in the operator's cash box and got the key to the pay station and opened the pay station and got the money out and then put the key back in her cash box.' I said, 'That's a little bit thick; do you think if I was going to steal money from the pay station I would put the key back in her cash box?' He said I was fired. That was about all that was said. Then I asked him to go in the office and see if he could prove these things, and he said, 'No, you are not going back in the office. You might steal something else,' and he told me he didn't want me in the office any more and I came down for my tools the next morning. Q. What did Mr. Bryant say about the Huddleston business? A. He said he also found out that I lied to him about Mr. Huddles-

ton's charges for pulling me out of the mud. . . . Q. What did he say about you lying? A. He said he had found out that I lied about what I had paid Mr. Huddleston and he said, 'That's two more dollars you've swindled the telephone company out of.' Q. What did you tell him? A. I told him I didn't do that.''

Plaintiff also testified that he later sought other employment from three or four Monette businessmen who refused to hire him after consulting W. L. Bryant about the circumstances of plaintiff's discharge by the telephone company. These prospective employers also testified that they either declined to hire plaintiff or dismissed him after consulting Mr. Bryant. However, the trial court instructed the jury to disregard all statements made by Bryant to these men and the issues were confined to a consideration of the statements made by Bryant in the presence of M. E. Blankenship on the date plaintiff was discharged.

According to his testimony, plaintiff earned $60 every two weeks working for the company, but, following his discharge, was only able to secure such odd jobs as mowing yards, at which he earned only $15 to $25 in a two-week period. He also testified that the accusations made by W. L. Bryant were false, and that he had suffered humiliation and embarrassment as a result thereof.

The testimony of M. E. Blankenship concerning the statements made by Bryant was substantially the same as that of his son. The statements were made in the father's presence and Bryant did not indicate that he desired a private conversation with plaintiff.

The defendant, W. L. Bryant, admitted having a conversation with plaintiff and his father on the street near the telephone office on the Sunday in question, but denied making the statements set out in the complaint. He testified that, acting upon information furnished by the telephone operators and others, he sought an explanation from plaintiff relative to his alleged possession of the key to the pay station coin box and an alleged overcharge of $2 to the company of the amount plaintiff paid

for having the company truck pulled out of a mud hole; that plaintiff denied having the key and making the overcharge; that he then informed plaintiff that the latter had not explained these transactions to his satisfaction and suggested that plaintiff "lay off" until the matter could be adjusted. Plaintiff was told to stay out of the office when he threatened to make trouble for the operators.

One of the operators testified that she saw plaintiff place a key to the pay station in a cash box on Saturday afternoon before the conversation on Sunday and so informed another operator who testified that she checked the coin box which contained only 15 cents although $4 had been deposited in the box a short time before the check was made. Plaintiff stoutly denied having the key to the coin box. There was also a sharp conflict in the testimony of plaintiff and C. B. Huddleston as to the amount paid the latter on February 9, 1946, for his services in pulling the truck out of the mud. Huddleston testified that plaintiff paid him only $2 at the time of the incident and an additional $2 some time in April when a receipt was issued to plaintiff at his request. A receipt was introduced in evidence which was signed by Huddleston and dated February 9, 1946, showing payment of $4. While Huddleston testified that the entire writing appeared to be in his hand, he did not recall placing the date of February 9, 1946, on the receipt.

For reversal of the judgment, defendants contend that the court erred in refusing to instruct a verdict in their favor at the conclusion of the testimony. It is earnestly insisted that the evidence was insufficient to take the case to the jury. It is argued that the defendant Bryant was acting within the scope of his employment as general manager of the telephone company, when the alleged slanderous statements were made to plaintiff, who was also an employee of the company and working under the defendant, Bryant. Under these circumstances, defendants insist that any statements made were qualifiedly privileged in the absence of express malice, which they contend has not been proven.

Defendants rely on the case of *Bohlinger* v. *Germania Life Ins. Co.,* 100 Ark. 477, 140 S. W. 257, 36 L. R. A., N. S. 449, Ann. Cas. 1913C, 613. That case involved an action for libel where the alleged libelous matter was contained in a communication between a life insurance company and its local agents concerning the availability of plaintiff as a risk for life insurance and his qualifications to be an insurance agent. It was held that the question whether a communication complained of as being libelous is one of qualified privilege becomes a question for the court where the facts adduced in evidence are undisputed. Mr. Justice FRAUENTHAL, speaking for the court in that case, said: ''If the statements are published by one in good faith to another in order to protect his own interest or to protect the corresponding interest of the other in the matter in which both parties are concerned, then such statements are privileged when the subject-matter of the publication makes it reasonably necessary under the circumstances to accomplish the purpose desired. . . . But the communications containing defamatory statements thus made should not, in any event, go beyond what the occasion required. If it is shown by the writing itself, or by evidence outside of the communication, that the occasion therefor was abused, or that the statements were not relevant to or went beyond the subject-matter or purpose of the agency or business, or that the statements were made from malice proved, then no protection will arise against the prosecution of an action for libel, although there may exist a common interest or duty of the parties between whom the communication passes. Such intrinsic or extrinsic evidence would show a want of good faith, and would repel the inference that there was no malice.'' Since the undisputed testimony in that case showed that the confidential report was sent by the defendant in perfect good faith and without malice, it was held that the trial court correctly directed a verdict for the defendant.

In the case of *Sinclair Refining Co.* v. *Fuller,* 190 Ark. 426, 79 S. W. 2d 736, this court approved the following statements from Newell, Slander and Libel,

(Fourth Ed.) p. 450: "A defamatory communication when necessary to protect one's own interest is privileged, when made to persons who also have a duty or interest in respect to the matter. In such case, however, it must appear that he was compelled to employ the words complained of. If he could have done all that his duty or interest demanded without libeling or slandering the plaintiff, the words are not privileged." In the same case this court also approved the rule stated in 36 C. J., p. 1248, as follows: "The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interest or his duties require. Where the party exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected, and the fact that a duty, a common interest, or a confidential relation existed to a limited degree is not a defense, even though he acted in good faith."

In Restatement of the Law, Torts, Vol. 3, § 604, it is said: "One who, upon an occasion conditionally privileged for the publication of false and defamatory matter to a particular person or persons, knowingly publishes such matter to a person to whom its publication is not otherwise privileged thereby abuses the privilege unless he reasonably believes that such publication is a proper means of communicating the defamatory matter to the person to whom its publication is privileged." A publication may also be excessive if the defendant purposely selects an occasion when a person outside the privilege is present, to make the slanderous statements. 33 Am. Jur., Libel and Slander, p. 179.

According to the testimony on behalf of plaintiff, the words used by defendant, W. L. Bryant, amounted to a charge that plaintiff had been guilty of larceny and such words are actionable *per se*. Section 3021, Pope's

Digest; *Gaines* v. *Belding,* 56 Ark. 100, 19 S. W. 236; *Safeway Stores, Inc.,* v. *Rogers,* 186 Ark. 826, 56 S. W. 2d 429.

In actions for libel or slander a *prima facie* presumption is ordinarily indulged that defamations which are actionable *per se* are malicious. 33 Am. Jur. Libel & Slander, § 266, p. 247. ''The fact that a publication is qualifiedly privileged simply relieves the publication from the presumption of malice otherwise attendant and does not change the actionable quality of the words published.'' 36 C. J., Libel & Slander, p. 1241-2. A publication loses its character as privileged and is actionable if it is motivated by express or actual malice. 33 Am. Jur., Libel & Slander, § 113, p. 115.

In the instant case we think the trial court did not err in refusing to find as a matter of law that the statements attributed to Bryant were made upon a conditionally privileged occasion and that the occasion was not abused; nor do we agree that the undisputed evidence demonstrates that the statements were made in good faith and without malice. If the testimony on behalf of plaintiff is credited, the court was warranted in finding that the occasion was abused and the publication excessive. The statements were made on the streets of Monette when plaintiff was not on duty. They were made in the presence of the father who was not asked to withdraw. The character of the language and the manner of its use as related by testimony on behalf of plaintiff was sufficient to warrant the conclusion that the defendant, W. L. Bryant, went farther than his interest or duties required. Under these circumstances the jury may also have inferred that defendant Bryant was motivated by actual malice.

The recent case of *Joslyn Manufacturing & Supply Company* v. *White, ante,* p. 362, 200 S. W. 2d 789, involved statements made by Roth, local manager of the manufacturing company, to White, a supervisor of a sawmill engaged in producing lumber for the company. The statements were made in the presence of White's employees. In discussing the contention that a verdict should have been directed for defendants, this court said: ''In

short, whether Roth has been quoted correctly or incorrectly, there was substantial testimony upon which liability could be predicated, and in that respect appellants' argument that there should have been a directed verdict for the deefndants cannot prevail; nor, in the light of testimony given by witnesses for the plaintiff, can it be said as a matter of law that the communication—when coupled with an accusation of theft—was privileged, or qualifiedly so. It was not a part of Roth's duty to inform White's employees of the accuser's beliefs, expressed in the manner testified to.''

It follows that the trial court did not err in refusing to instruct the jury that the alleged slanderous statements were conditionally privileged as a matter of law, as requested in defendants' instruction No. 3. In instruction No. 2 given at the request of defendants, the jury was told that the burden was upon plaintiff to prove by a preponderance of the evidence that the alleged slanderous statements were made by the defendant Bryant; that such statements were untrue, and made with malice on the part of Bryant.

Defendants also insist that error was committed in the refusal of the trial court to give their requested instruction No. 5 as follows: ''You are told that even though you find from a preponderance of the evidence that the alleged slanderous statements were made in the presence of the plaintiff's father, Mert Blankenship, and you further find that the presence of the father at the time and place such statements were made was with the permission, or at the instance of, or with the connivance of the plaintiff, there was not such publication as would entitle plaintiff to recover.'' We think the evidence did not warrant the giving of this instruction. All the testimony is to the effect that plaintiff and his father went to W. L. Bryant on a mission for the father and to discuss the prospect of the father obtaining a paint job with the company. W. L. Bryant testified that such discussion took place and that the Blankenships were about to depart when he, Bryant, brought up the matter which led to the making of the alleged slanderous statements.

654

The father was not asked to withdraw from the conversation and the evidence did not warrant a conclusion by the jury that the presence of the father was at the instance, or with the connivance, of the plaintiff when the alleged slanderous statements were made.

We find no prejudicial error, and the judgment is affirmed.