DILLARD DEPARTMENT STORES, INC.
*v.* Donnie R. FELTON

82-56                                                      634 S.W.2d 135

Supreme Court of Arkansas
Opinion delivered June 7, 1982

*Wright, Lindsey & Jennings,* for appellant.

*Lanny K. Solloway,* for appellee.

STEELE HAYS, Justice. Appellee was formerly employed at a warehouse of appellant Dillard Department Stores, Inc., and brings this action for defamation based on statements by supervisory employees of Dillard accusing him of theft. The trial court sitting with a jury awarded appellee $2,000 compensatory damages and $5,000 punitive damages. For reversal, appellant contends, first, the defamatory statements relied upon by the appellee did not exceed the

qualified privilege existing under the law and there was no substantial evidence that the statements were made with express or implied malice; and second, the evidence does not support an award of punitive damages. We sustain the argument with respect to punitive damages but affirm the judgment as to compensatory damages.

Stating the facts most favorably to the appellee: On June 28, 1981, at quitting time, a Dillard security officer observed a box of Dillard merchandise in appellee's car in the parking lot. Appellee was unable to produce a sales receipt, as required of employees who make cash purchases from the company. The following morning he was called to the office of the warehouse supervisor, George Burger. Mr. Burger, Emory Martin, appellee's immediate supervisor, and the appellee were present. Mr. Burger asked appellee to explain his possession of the merchandise without a sales receipt and his having been seen leaving the warehouse with the merchandise by an unauthorized exit. Appellee's response was that the exit rule was not enforced and that he had bought the articles the previous week at a company warehouse sale and had left them in Mr. Martin's office over the weekend. He said the merchandise and sales receipt were in a Dillard's sack but somehow during the interval the sack was destroyed and the receipt lost. Mr. Burger said, "I think you're a liar and a thief." He told appellee he had received an anonymous telephone call that appellee had been attempting to sell two stereo speakers missing from the warehouse, suggesting the evidence might justify criminal prosecution. At this point appellee became angry and walked out of the meeting. Outside Burger's office as he was leaving, appellee told a fellow employee, Alonzo Waller, that he had been accused "of taking some things." When Mr. Martin came out of Burger's office, Waller asked him what had happened and in the presence of several employees Martin said appellee had been fired because he had been caught stealing.

Sometime later appellee's wife called Mr. Martin to ask why appellee was fired. She testified Mr. Martin said all he knew was "there was an anonymous phone call about some speakers that Ronnie was selling and that there was nothing he could do. . . . "

Appellee went immediately to the Employment Security Division to seek unemployment benefits. Appellee testified he told an unidentified woman interviewing him, ". . . I was fired and accused of theft and dishonesty." When the ESD interviewer called Mr. Burger to verify appellee's termination, Burger testified: . . . "She said, 'I want to verify that Mr. Felton was fired for alleged theft' and I just said 'no,' that he was going to be terminated for violation of company rules." This testimony of this conversation is uncontradicted as the unidentified ESD employee did not testify.

Still later Mrs. Willis of the Employment Security Division telephoned Carl Williams, appellant's Director of Personnel, requesting a letter stating the reasons for appellee's termination. Mr. Williams wrote in response: "The circumstances leading up to this involves Mr. Felton having possession of merchandise for which he could not produce a receipt."

First, we consider whether the publication of these communications exceeded the scope of the qualified privilege. The relevant law is summarized in the Restatement (Second) of Torts § 595 (1981):

(1) An occasion makes a publication conditionally privileged if the circumstances induce a correct or reasonable belief that

(a) there is information that affects a sufficiently important interest of the recipient or a third person and,

(b) the recipient is one to whom the publisher is under a legal duty to publish the defamatory matter or is a person to whom its publication is otherwise within the generally accepted standards of decent conduct.

(2) In determining whether a publication is within the generally accepted standards of decent conduct it is an important factor that

(a) the publication is made in response to a request rather than volunteered by the publisher or

(b) a family or other relationship exists between the parties.

Prosser explains the qualified privilege as follows:

There remain a group of situations in which the interest which the defendant is seeking to vindicate is regarded as having an intermediate degree of importance, so that the immunity conferred is not absolute, but is conditioned upon publication in a reasonable manner and for a proper purpose. The privilege is therefore spoken of as "qualified," "conditional," or "defeasible." It is difficult to reduce these cases to any single statement, and perhaps no better formula can be offered than that of Baron Parke, that the publication is privileged when it is "fairly made by a person in the discharge of some public or private duty, whether legal or moral, or in the conduct of his own affairs, in matters where his interest is concerned." W. Prosser, The Law of Torts, § 110, p. 805 (3rd ed. 1964).

One important condition attaches to the qualified privilege, such communications must be exercised in a reasonable manner and for a proper purpose. The immunity does not protect a defendant from publication to persons other than those whose hearing is reasonably believed to be necessary or useful for the furtherance of that interest. Prosser, *supra*, at p. 819.

We believe the statements made at the June 19 closed-door meeting come within the qualified privilege afforded an employer. *Merkel* v. *Carter Carburetor Corp.*, 175 F.2d 323 (8th Cir. 1949), 53 C.J.S. *Libel and Slander*, § 109 (1948). The only persons present other than the appellee were the warehouse manager and a supervisor, both of whom had a legitimate interest on behalf of appellant to investigate appellee's possession of merchandise without the required receipt.

Nor does the communication from Mr. Martin to appellee's wife strike us as excessive. The communication was factual and was in response to her inquiry. (See Restatement, *supra.*) She had an interest in learning the reason for her husband's termination, making this communication neither unnecessary nor excessive. *Thomas* v. *Kaufman's,* 436 F. Supp. 293 (W.D. Penn. 1977), 53 C.J.S. *Libel and Slander* § 120 (1948).

We next examine those statements made by appellant's employees to the Employment Security Division. The trial court held these not to be within the qualified privilege. We disagree. These communications fall within the general rationale for which the qualified privilege was created by protecting statements made in good faith with reasonable grounds for believing them to be true on a subject matter in which the author has a public or private duty to a person having a corresponding duty. 53 C.J.S. *Libel and Slander* § 89 (1948). Similarly, this privilege extends to reporting agencies. *Dun & Bradstreet, Inc.* v. *Robinson,* 233 Ark. 168, 345 S.W.2d 34 (1961). Under the Employment Security Act a discharged employee's entitlement to benefits depends in part on the circumstances of his termination and plainly the employer's duty to report accurately to the ESD carries a qualified privilege. We find no evidence that the content of all of the communications, oral and written, to the Employment Security Division was factually inaccurate, beyond what was necessary, or was lacking in good faith.

Finally, the statement by Emory Martin to Alonzo Waller and others that appellee was "fired because he was caught stealing" cannot be similarly disposed of, as we find no justification in fact for Martin's statement, nor any reason for the recipients (Waller and the other employees) to have an important interest affected by the investigation. Notwithstanding the fact that Waller, rather than Martin, initiated the communication and that some privilege applies to an employer's right to inform other employees that one of their number has been discharged for theft, nevertheless, when viewed in the light most favorable to the appellee we find the statement exceeds that which was necessary to the sitaution. Martin did not simply state that

appellee was under investigation for theft, or for violation of rules, but that appellee was fired because he was caught stealing. The statement was factually incorrect and obviously injurious to the appellee. He was not caught stealing and according to appellant's argument on appeal he had not even been fired, but had quit. The most that Martin could have said in truth was that appellee had been found to be in possession of goods without a receipt and was suspected of theft. Since we find no legitimate interest necessitating Martin's statement and find it to have been factually inaccurate at the expense of appellee's reputation, we think it excessive and therefore supportive of the award of compensatory damages.

Appellant argues that any defamatory impact was effectively nullified by the fact that Waller had already been told essentially the same thing by appellee on leaving the warehouse. But we disagree. There is a vast difference in saying someone is *accused* of stealing, as opposed to saying that someone has been fired because he was caught stealing. The former plainly implies the possibility of error — the latter, unquestioned guilt. Mr. Martin was under no obligation to divulge anything to other employees, at least at that point, and having chosen to speak, his communication should have been strictly accurate. When this evidence is given its fullest import it exceeds the privilege afforded under law. In *Arkansas Associated Telephone Company* v. *Blankenship,* 211 Ark. 645, 201 S.W.2d 1019 (1947), we approved the following language:

> "The protection of the privilege may be lost by the manner of its exercise, although the belief in the truth of the charge exists. The privilege does not protect any unnecessary defamation. In order for a communication to be privileged, the party making it must be careful to go no farther than his interest or his duties require. Where the party exceeds his privilege and the communication complained of goes beyond what the occasion demands that he should publish, and is unnecessarily defamatory of plaintiff, he will not be protected, and the fact that a duty, a common interest, or a confidential relation existed to a limited degree is

not a defense, even though he acted in good faith." (At p. 651.)

Turning to the question of malice, the trial judge expressly found no actual malice. The appellee acknowledged that he did not believe either Burger or Martin "had it in for him." In fact, he admitted that Mr. Martin suggested appellee use his name as a reference for future employment. Appellee argues malice may be inferred from appellant's failure to further investigate the alleged theft after the June 19 meeting. The argument is unsound. Appellant's action or inaction in this respect is consistent with its contention that the appellee had quit and consequently there was no reason to continue the investigation or take further steps in the matter.

Although it is said that express malice requires no extrinsic proof and can be inferred by the jury from all of the circumstances of the case, nevertheless where the totality of the evidence is such that fair-minded men could not infer malice, an award of punitive damages cannot be upheld. We find no evidence that any ill-will was harbored by appellant's employees, or that they were motivated by malice or bad intent toward the appellee, as his own testimony sustains. It is significant that Martin's statement was not volunteered, but made in response to Waller's question, an important element in mitigation (Restatement, *supra*). We conclude the award of punitive damages cannot be upheld. *Braman and The Gus Blass Co.* v. *Walthall,* 215 Ark. 582, 225 S.W.2d 342 (1949); *Stallings* v. *Whittaker,* 55 Ark. 494, 18 S.W. 829 (1892); *Luster* v. *Retail Credit Co.,* 575 F.2d 609 (8th Cir. 1978).

Affirmed as to compensatory damages; reversed as to punitive damages.