The Honorable Mike Beebe State Senator 211 Arch Searcy, AR 72143
Dear Senator Beebe:
This is written in response to your request for an Opinion concerning the propriety of legislative in Arkansas which would preclude an employer who is asked for a job reference for a former employee from having liability except for intentional false statements made about that employee to a prospective employer.
As you note in your letter, the threat of civil litigation for unfavorable employment recommendations has become of concern to employers in Arkansas and nationwide. You state that you're interested in the possibility of Arkansas enacting a law which would limit an employer's liability and also for us to relate any problems we might envision with such legislation.
Our research indicates that increasingly, causes of action against a former employers are brought in federal court pursuant to42 U.S.C. § 1983, a civil rights statute which precludes deprivation of the constitutional rights of an individual under color of state law. Of course, one of the reasons for this burgeoning of civil rights litigation is that Congress has authorized attorneys who bring such actions and prevail to obtain attorneys fees under 42 U.S.C. § 1988. The cases reviewed show that former employees who are given negative job references sue their former employers under 1983 for deprivation of their "liberty interest" in their good name and reputation without due process of law. Also, a defamation action, pendent to the federal claim, is usually brought against the former employer in conjunction with the civil rights lawsuit. A good example of this type of lawsuit is found in Arkansas' Western District Federal Court in Karr v. Townsend, 606 F. Supp. 1121
(1985). In that case, District Judge Waters construed a public employee; namely a Deputy Sheriff, to have a protected liberty interest under the 14th Amendment to the U.S. Constitution and subsequent United States Supreme Court cases construing that Amendment. At page 1127, Judge Waters notes that:
 the law in the Eight Circuit appears to be that it is not really necessary for a party suing under section 1983 for violation of a liberty interest [to] show that he has been defamed. . . . [I]f the reasons given are defamatory in nature if not true, and if the employee is not given an opportunity to rebut them, . . . he is still entitled to nominal damages and attorneys fees if he is not afforded the opportunity to futilely try to clear his name at a name-clearing hearing.
Judge Waters has again taken this position in a case called Hogue v. Clinton, in which a state employee was terminated by the Division of Social Services, Department of Human Services. That case is currently on appeal to the Eighth Circuit Court of Appeals for determination of whether a public employee does indeed have a sufficient liberty interest in his good name to invoke the protection of the 5th and 14th Amendments. The law in this area concerning public employees is uncertain at present. So far, the Federal District Judges of the Eastern District of Arkansas; i.e. in Seal v. Pryor, 504 F. Supp. 599 (1980), aff'd 607 F.2d 96 (8th Cir. 1981) have held that a public employee does not have a property interest in his employment nor a liberty interest unless the stigmatizing information is false and the source of such information is the public employer.
The situation you pose in your request, of course, can include private employers and employees as well. Judge Waters in Karr, supra, at 1131 notes that:
 [U]nless the county personnel policy . . . provides [the Deputy Sheriff] with a property interest, it is clear that Karr's employment was terminable `at will' under Arkansas law [Citations omitted]. Plaintiff's employment was not under tenure or contract nor was there any clearly implied promise of continued employment unless the personnel policies accomplished this. Thus, at least absent the personnel policy, Plaintiff had no legitimate claim of entitlement to employment . . . unless the county personnel policies legally and effectively granted to the Plaintiff the contractual right to his employment or a legally enforceable expectancy of continued employment, and granted to him no property interest protected by the due process clause of the Constitution.
Because of this disagreement among district courts, it is currently unclear in Arkansas as to whether a public or private employee has a sufficient liberty interest in his good name to be able later bring suit under 1983 for damage to his reputation. However, a private or public employee may have a property interest in any given circumstance based on the factors set out in Karr; namely, whether their employment is under tenure or contract or there is any clearly implied promise of continued employment.
It is likely Arkansas will have more lawsuits in the future alleging deprivation of civil rights when derogatory remarks about an employee are made by a former employer to a prospective employer. However, because there seems to be a trend toward bringing these kind of actions under 1983, obviously, no remedy exists in enacting Arkansas legislation as any change to federal laws must be accomplished by Congress.
On the other hand, such actions against former employers for negative job references may be brought in state court as defamation lawsuits. The issue of defaming employees has apparently arisen in several other state court actions — Saunders v. Van Pelt, 497 A.2d 1121 (Me. 1985); Great Coastal Express, Inc. v. Ellington, 334 S.E.2d 846 (Va. 1985), Wendler v. DePaul,499 A.2d 1101 (Pa. 1985); and Kellums v. Freight Sales Centers, Inc.467 So.2d 816 (Fla.App. 1985). The cited Florida case is most on point. At page 817, the Florida Appeals Court stated:
 Florida recognizes that an employer may claim a qualified privilege in communicating information about a former employee to a prospective employer, but he is obligated to act reasonably and prudently in doing so . . . the employer is free to communicate his honest opinions about the employee's job performance and any information which is relevant to the inquiry being made . . . however, the employer cannot deliberately lie about the employee's conduct.
The Florida Court goes on to note that an employer cannot absolve himself of liability for an intentional tort — defamation — by an exculpatory clause in an employment contract as this is against public policy.
The Florida Court's reasoning is consistent with Prosser 115 at 795, 796 (4th ed. 1971) and other cases — Anson v. Erlanger Minerals and Metals, Inc. 702 P.2d 393 (Okl. App. 1983) and Anderberg v. Georgia Electrical Membership Corporation,332 S.E.2d 326 (Ga. 1985).
Arkansas recognizes that qualified privilege is granted to "public officials" in speaking of current and former employees' job performance in Dillard Department Stores v. Felton, 276 Ark. 304,634 S.W.2d 135 (1982); and Gallman v. Carnes, 254 Ark. 987,497 S.W.2d 47 (1973). In Dillard, supra, the Arkansas Supreme Court states that the law of Arkansas is summarized in the Restatement of Torts 595 (1981) (which tracks the quote from Prosser supra) in that qualified privilege exists if the information is of sufficiently important interest to the recipient or third person. However, the Supreme Court cautions at page 308:
 [S]uch communications must be exercised in a reasonable manner for a proper purpose.
In keeping, then, with other states, Arkansas appears to allow qualified privilege for former employers as long as the information given is accurate and is given to parties that have a sufficient interest therein.
The basis for such privilege is in accordance with language found in the most recent U.S. Supreme Court case on defamation — Philadelphia Newspaper, Inc. v. Hepps, 54 U.S. L.W. 4373 (April 21, 1986) at page 4375:
 [W]e believe that a private-figure plaintiff must bear the burden of showing that the speech at issue is false before recovering damages for defamation form a media defendant.
Thus, even under state court precedents in Arkansas (and elsewhere), a former employer is generally protected in giving a negative job reference as long as he exercises some reasonable care in doing so; namely, that the information given is accurate and can be documented and proven from his point of view.
It would probably not be of much assistance to attempt to limit, by state law, an employer's liability in this regard because of the fact that defamation is an intentional tort and, pursuant to the language in Kellums, supra, it is against the public policy of a state to attempt to limit liability for intentional torts.
Since the law in Arkansas already appears to require that a negative job reference must be intentional and false for an action to lie against the employer, legislation precluding liability for negligent statements may not be necessary. This is not to say that someone cannot be sued for such statements. But, until a definitive ruling from the Eighth Circuit is forthcoming on the questions presented, such suit would not likely be successful.
I hope this discussion is of assistance to you.
A copy of this request has been sent to Mr. Larry O'Dell of the Stuttgart Daily Leader.
The foregoing opinion, which I hereby approve, was prepared by Special Counsel to the Attorney General R.B. Friedlander.
Sincerely, STEVE CLARK Attorney General
RBF/mo